William H. Clopton v. William G. Elkin, Adm'r, *de bonis non*

1. FRAUD—MISREPRESENTATION.—Plaintiff in error sets up in his plea that he and one J. H. Clopton, before the sale made by McAllister and Bramlett, administrators, informed them that they would become the sureties of Kendrick, for any amount of property he might buy at the public sale. That Kendrick's purchase amounted to $1188.45. That afterward, and before the execution of the note, Kendrick became indebted to the administrators otherwise, and not for property bought at the sale, in the further sum of $400. That the administrators included the $400 in the note sued on, and presented the note to defendants, signed by Kendrick, and fraudulently and knowingly held the same out to defendants as for that sole consideration. That defendants being misled, and supposing that such was the only consideration, ignorantly signed the note. *Held:* That the note, under this state of facts, is not voidable in *toto*, but voidable to the amount of the excess. Goss & Hammond v. Whitehead, 33 Miss., 213.

2. PLEADING—PROMISSORY NOTE—AMOUNT IMPROPERLY INSERTED.—To render the note voidable, as to the sureties, for the excess, it is not necessary that Kendrick, their principal, should have participated in the fraud, and it is error to instruct the jury that the principal in the note must have combined with the administrators, or one of them, to perpetrate the deceit and imposition.

3. PROMISSORY NOTE—INTEREST.—The phrase " with interest at 8 per cent.," in a note, implies interest from its date. 2 Parsons on Bills and Notes, 392.

Error to the circuit court of Monroe county. Hon. B. B. Boone, Judge.

*Sale & Dowd,* for plaintiff in error.

Ulysses McAllister and F. M. Bramlett, administrators-in-chief of the estate of John Fortson, deceased, sued Wm. H. Clopton and John Clopton, in debt, upon a note for $1538.45, dated May 6th, 1861, due February 21st, 1862, executed by them to the plaintiffs as such administrators, by one A. Kendrick (since deceased) as principal, and the defendants as sureties.

The defendants filed divers pleas.

1. Two separate pleas of *non est factum.*

2. A joint special plea of fraud on the sureties, by the administrators, in the concoction of the note sued on. To this plea a demurrer was sustained with leave to amend.

3. The joint plea of *nil debet.*

4. Another joint special plea of fraud, with leave of the

court given, upon sustaining demurrer to second plea, alleging fraudulent collusion with the plaintiff and Kendrick, the principal debtor. John H. Clopton afterward pleaded his discharge in bankruptcy, which resulted in a verdict for him.

Plaintiff filed a demurrer to the joint (fourth) plea, which being overruled by the court, they took issue on it, and went to trial on all the pleas, except the second joint one, and a verdict was found against Wm. H. Clopton for the full amount of the note, and 8 per cent. interest.

Before the trial, the administrators resigned, and Wm. G. Elkin was appointed administrator *de bonis non*.

The first error complained of, is sustaining plaintiffs' demurrer to second plea. The facts alleged in that plea, as constituting a fraud in fact, perpetrated by the administrators-in-chief upon the sureties, (and which the sequel shows were conclusively proved on the trial).

Kendrick desired to purchase property at the administrators' sale. The Comptons informed the administrators that they would become his surety for such amount as *he* might purchase *then* and *there* at *that public sale*. Kendrick bought to the amount of $1138.45, but the note was not executed until the 6th of May, following. Meantime, and some month or two after the public sale, and without the knowledge of the sureties, Kendrick privately contracted a *further debt of* $400. Afterward, and without the knowledge or consent of the sureties, the administrators caused to be prepared the note for $1538.45, here sued on, signed by Kendrick, and presented the same to the proposed sureties for their signatures; and they fraudulently and knowingly held the same out to them as, and for the amount of Kendrick's purchase *at the public sale of February* 21*st*. The sureties, deceived and misled by this fraud, then ignorantly executed the note, believing it represented the particular transaction for which they had originally proposed to undertake. The sequel shows that the allegations of the plea were not mere abstract propositions of fact.

Assuming them to be true, it does seem to us we need not elaborately maintain that they constitute a fraud in fact upon the sureties, by the creditors alone, in the concoction of the note.

The sureties might well be legally supposed to be willing to answer for the principal purchases at a public auction sale, which would necessarily be a test of the true *market* value of the commodity acquired, rather than trust to his unguided discretion and judgment, in that particular, in a *private transaction.*

They might likewise be legally supposed to be willing to undertake, for the purchaser of a commodity, at a price it bore in the market, at a particular date, while they might be unwilling to be responsible for such possible price the same commodity would command, *at any future or other date.*

Again, they might well be legally supposed to be willing to guarantee a purchase of *such amount* of goods or supplies as the principal might profess, or conceive, himself to need, at a particular given date, while they might not be willing to guarantee for such further amount as he may ascertain he needs at an indefinite *future* date.

And again, they might well and legally be supposed to be willing to bind themselves to become surety for a man, at a given day, for an unlimited amount, and without restriction, while they would be unwilling to undertake for the same man, for any amount, on the very next day, and especially one or two months later.

Finally, whether it be for either of the reasons indicated, or for all of them, or for any others, or for *no* special reason at all, it is indispensable that the law concedes, to one proposing to become surety for another, the right to adhere to precisely such terms, conditions and limitations as he may have prescribed, either as to time, place, amount and mode. Not being liable originally, he may even capriciously dictate the conditions upon which he is willing to become indebted for another. And if the creditor deceives and misleads a

surety into executing an obligation, different in any particular from what he proposed to assume; nay, if he even knowingly *permit* him to do so, in ignorance of said difference in fact, it is equivalent to a fraudulent misrepresentation, and avoids the instrument.

The principle we are here maintaining, is illustrated in the following citations :

Theobald on Prin. and Surety, marg., pp. 147-8-9 ; ib., 155-6-7-8-9; Pidcock v. Bishop, 10 Eng. Com. Law Rep., 197 ; Jackson v. Duchaire, 3 Term. Rep., 551 ; Stone v. Compton, 35 Eng. Com Law, 57; Spencer v. Hardy, 5 Scott N. R., 546 ; Chitty on Contracts, 527-8; Miller v. Stuart, 5 Cond. U. S. Rep., 726, 730 ; Graves v. Tucker, 10 S. & M., on page 22 of the case citing Stone v. Compton, 35 Eng. Com. Law, supra; 2 Kent, at foot of page 483; 1 Story's Eq., §§ 214, 224; Ludlow v. Simond, 2 Caine's Cases, 1; Campbell v. French, 6 Term. Rep., 97; In Peel v. Tatlock, 1 Bos. & Pul., on page 422. Justice Buller said: "If any new debt had been incurred, or if the demand had been enlarged, that might have been a fraud on the guarantor."

And it makes no difference that *no injury*, in fact, really results to the surety by the change, or even *if it be actually beneficial to him.* Woolmer v. Merilman, 3 Burrow, 1419, ed. of 1833, p. 73; Nesbet v. Smith, 2 Broom's Chy. R. on Marg., p. 582, note 6; Miller v. Stuart, 5 Cond. Rep., 727, *supra.*

Voidable as to the amount of $400. Johnson, administrator, v. Blasdale, *et al.*, 1 S. & M., 17; Goss v. Whitehead, 33 Miss., 213. Refers to Henderson v. Ilsley, 11 S. & M., 9 ; Bingaman v. Robertson, 25 Miss., 501, 504; Maul v. Kirkman, ib., 609, 620; Duncan v. Watson, 28 Miss., 187, 206-7; Chitty on Con., 591; 3 Graham & Waterman on New Trials, pp. 1207-8; 7 How., 414; 9 S. & M., 375; 2 Wendell, 555; 8 Cowen, 71; 9 ib., 125.

*Houston & Reynolds*, for defendant in error.

We insist that the proposition, as stated and contended for by counsel for plaintiff in error, is too broad; it goes

further than the authorities which are cited.  To vitiate the contract of a surety, there must be *actual* fraud on the part of the creditor.  A *constructive* fraud will not vitiate the contract.

In Pidcock v. Bishop, 10 Eng. Com. L. Rep., 197, cited as a leading case by counsel, there was a second bargain between the creditor and the principal, which not only varied the contract of the guarantor, but increased the responsibility, and of which bargain the *creditor knew* the guarantor was ignorant.

In North British Insurance Company v. Lloyd, 28 Eng. Law and Eq., R., 462, Pollock, C. B., says: "That case (Pidcock v. Bishop) was decided on the ground of *actual* fraud," and "although there was some expression used by Mr. Justice Bailey as to the necessity of communicating to the surety all the material facts likely to affect the surety, yet these expressions must be understood with respect to the facts of the particular case to be decided."

In Stone v. Compton, 35 Eng. Com. Law, 57, the contract of the surety was held void, because of a material misrepresentation by the creditor's agent to the surety.  Mr. Chief Justice Tindall says:  "The principle to be drawn from the cases we take to be this: that, if with the *knowledge or assent* of the creditor, any of the material parts of the transaction, between the creditor and the debtor, is *misrepresented* to the surety, which varies his liability, the surety is discharged.

To discharge the surety, there must be *misrepresentation*, with the knowledge or assent of the creditor, which amounts to actual fraud.  Concealment of material facts affecting the liability of the surety, is not sufficient.  To illustrate:  C., at the instance of B., becomes B.'s surety to A.  At the time the contract was entered into, B. is largely indebted to A., and on account thereof B.'s solvency is doubtful.  A. does not disclose to C. a history of B.'s condition. Does the failure of A. to make this disclosure, avoid the

contract of C.? Clearly not. No legal obligation on the part of A. to make the disclosure; no relation of trust, or confidence, between A. and C. But suppose B., in the presence of A., or with his knowledge, had represented to C. that he (B.) was free from debt. This misrepresentation on the part of B. would avoid the contract as to C., not by reason of any legal obligation on the part of A. to make a full disclosure of B.'s condition, but because of the actual fraud of B., and in which A. had participated.

To present another illustration, and one more analogous to the case now before the court: C. agrees to become B.'s surety for purchases to be made at a certain sale, and this is known to A., the seller. A. includes in the note of B. other purchases than those made at the sale, and it is signed by B. and C., A. concealing the fact that the note did not include alone the purchases for which C. had agreed to become responsible, and *ignorant of the fact* that B. had concealed it from C. We insist that this concealment on the part of A. does not avoid the contract. There is no legal obligation on the part of A. to make the disclosure, and he may assume that C. has acquired the information from B., between whom exists the relation of trust and confidence. But if A., the creditor, knew that B., the principal, had concealed from, or misrepresented to, C., the surety, a fact materially affecting his liability, and the creditor had failed to make a full disclosure, or correct the misrepresentation, the surety would be discharged, because of the actual fraud of the principal, in which the creditor had participated.

A surety is in general the friend of the principal debtor, acting at his request and at that of the creditor, and in ordinary cases it may be assumed, that the surety obtains from the principal all the information he requires, and there is no obligation on the part of the creditor to make a disclosure of any thing that materially affects the liability of the surety, unless the creditor knows that the principal has misrepresented to the surety, or has concealed from him material facts

affecting his liability. When the creditor is possessed of the knowledge, then he is required to represent the transaction fully and truly to the surety. Any other principle than the one which we have announced, would practically prohibit the obtaining of contracts of suretyship in matters of business. The principle is founded on reason, and sustained by authority. The North British Ins. Co. v. Lloyd, 28, Eng. L. & E., 458; Selsor v. Brock, 3 Ohio State R., 307; Britton v. Matthews, 10 Clark & F., 934; Hamilton v. Watson, 12 Clark & F., 109; Ætna Life Ins. Co. v. Mablett, 18 Wisconsin, 668; Van Amsdale & Co. v. Howard, 5 Ala., 596, 600.

To apply these principles to the second plea, it is objectionable because it does not state that plaintiff below *knew* that the defendants were ignorant that other purchases than those made at the public sale were included in the note, and fraudulently concealed it from the defendant.

The averment that defendants executed the note believing it to represent the particular transaction for which they had originally agreed to become surety, is not sufficient. It should have averred in addition, that plaintiffs below knew that defendants so regarded the transaction, and they fraudulently concealed it from them. The duty of disclosure to the sureties was on the part of Kendrick, the principal, and until plaintiffs knew that he had failed to inform defendants of the addition to their liability, there was no obligation on them to make the disclosure.

The note in controversy, is the property of the estate of John Fortson, and the fraud which is set up as a defense to it, is the fraud of the administrators-in chief of the estate. We regard it as settled in this State, that if an administrator practice a fraud upon a purchaser, or the surety of a purchaser, at an administrator's sale, the remedy of the purchaser or surety, is by an action against the administrator. That the fraud of an administrator is his fraud, and for which he is personally liable, and that it does not affect the estate which

he represents. George v. Bean, 30 Miss., 150 ; Hutchins v. Brooks, 31 ib., 430; Cocke v. Hunter, 34 ib., 108, 109 ; Heath v. Allen, 1 A. K., Mar., 443.

An alteration of a written instrument by a stranger will not render the instrument inoperative. Nichols v. Johnson, 10 Conn., 192; Boyd v. McConnell, 10 Humph., 68 ; Lee v. Alexander, 9 B. Mon., 25.

Error, if made with the consent of the party claiming under the instrument, provided there be no intention to defraud. Thornton v. Appleton, 29 Maine. 298; Adams v. Frye, 3 Met., 103 ; Smith v. Dunham, 8 Pick., 246 ; Marshall v. Gozler, 10 Serg. & R., 164; Williard v. Clark, 7 Met., 435 ; Rollins v. Bartlett, 30 Maine, 319.

Where the original contents of the instrument can be ascertained, Wering v. Smythe, 2 Barb., ch. R., 119, or can be proved. Boyd v. McConnell, 10 Hump. 68.

The charge, even if abstract or erroneous, did not mislead the jury. They found by their verdict that the words, "interest at eight per cent." were inserted before signature, and they could not have found otherwise under the testimony.

The fourth charge is as follows: "If the jury believe from the evidence, that the words, "interest at eight per cent." were inserted in the note before signature, and find the other issues for the plaintiff, they will find "interest at eight per cent. from the date of the note." The words with interest, or bearing interest, or any such phrase, will be held to imply interest from date, and this even if there be other terms which may raise a doubt. 2 Parson, Notes and Bills, 392, notes 6 and 9; 10 Ad. & Ellis. 222; Chitty on Bills, 762, note 1.

SIMRALL, J., delivered the opinion of the court:

The plaintiffs in error sought to be relieved from liability on the ground, mainly of fraud practiced upon them as sureties for the debt of one Kendrick.

The matters complained of as error, arose upon the rulings of the circuit court on the pleadings, on the admission and

rejection of testimony, the instructions to the jury, and on the motion for a new trial.

The defense (raised somewhat in the other pleadings) mainly urged, is contained in the second plea, to which a demurrer was sustained. In that plea these facts are averred; that before the sale made by the administrators, the defendants informed them, that they would become the sureties of Kendrick for any amount of property he might buy at the public sale; that Kendrick purchased corn to the amount of $1138.45; but that afterwards, before the date, and execution of the note, Kendrick became indebted to the administrators, by assumpsit, or otherwise, and not for property bought at the sale, in the further sum of $400, parcel of the note; and that afterwards, without the knowledge and consent of the defendants, the said administrators fraudulently, and knowingly, prepared, or caused to be prepared, the note, including the $400; and presented the same to the defendants, signed by Kendrick, as for the amount of his purchases; and held the same out to the defendants as for that sole consideration; being misled, and supposing that such was the only consideration, the defendants ignorantly signed the note.

The plea affirms as a proposition of law, that it was a fraud upon the defendants, after they had informed the administrators of the extent to which they would undertake for Kendrick, purposely and knowingly to include in the note, another and different indebtedness of Kendrick; and to hold out to them that they were only binding themselves for the amount contemplated, when in truth more was included of which they were ignorant.

It would seem that the circuit court held the plea to be bad, because it omitted to implicate Kendrick, the debtor, in the covin and deceit; for under the judgment of *respondeat ouster*, the defendants interposed another plea, in all respects reiterating the allegations of the former, with the new and additional fact, that Kendrick took part with the administrators, in the imposition upon the defendants; which plea,

upon demurrer, was ruled to be good. The principle announced by Lord Tindall, in 4 Bing. N. S. Rep., and accepted by the elementary writers, is, that fraud by the creditor, or by the debtor, with his assent, in relation to the obligation of the surety, will discharge the latter from liability. This doctrine was pressed by counsel in Graves v. Tucker, 10 S. & M., 9, but the circumstances did not bring the case within its operation. The plea by three of the defendants was, that they signed and sealed the bond in the belief that Middleton & Hogg had executed the same, as their act and deed, whereas, in truth, said writing obligatory was only to be binding on Middleton & Hogg, on the condition that Hemmingway & Parker should execute the same, which they never did. It was further averred, that Middleton & Hogg delivered the bond to Graves, the principal, to be binding on them on the condition that Hemmingway & Parker became obligors. The plea was declared to be insufficient, because the State, the obligee, was in no wise implicated in the fraud. Graves was the party in whom the defendant reposed confidence. The State was blameless. To exonerate them from the burden, would be a fraud upon the State. If the State had assented, or been privy to the conditional obligation set up in the plea, then the defense would have been brought within the operation of the rule, and no liability would have been incurred. Of similar import is Fitz v. Green, 2 Dev. Rep., 291 : An order of court required a new bond, with two designated persons as sureties ; one executed it, and left it with the clerk. The other failing to become a party to it, it was held that the instrument had not been accepted, and did not become operative. So where the agent of the plaintiff informed the defendant that another was to join in the note, who failed to do so, was a conditional contract to take effect upon the performance of the condition. Stone v. Compton, 35 Eng. Com. L. Rep., 64.

The plea, in substance, states that the administrators knew the note embraced $400 over and above the amount for which the defendants notified them they would under-

take for the principal, yet they held it out, and pretended that it was only for the proper sum, and the defendants signed in ignorance. We think the defense is brought within the range of the principle illustrated in the authorities cited ; but whether it reaches and taints the whole contract, or only the excess, will be considered hereafter.

On the trial, the court refused to permit one of the defendants to depose that McAllister, one of the administrators, and whilst acting as such, admitted to be true a series of facts, being mainly those set out in the second and fourth pleas. At the time of the trial, McAllister and his associate were not in office, having previously surrendered or been discharged from their trust. The suit was being prosecuted by W. G. Elkin, administrator *de bonis non*. Among the exceptions to the rule, which excludes hearsay testimony, the admissions of a party to the record, or of one identified in interest with him, are as against such party admissable. 1 Greenl. Ev., § 172. But the proposed admissions are not against a party to the suit, nor is the present plaintiff identified in interest with McAllister, his predecessor. No privity exists between them. Ruff v. Smith, 31 Miss., 62. Moreover, McAllister not being a party to the record, or interested in the subject matter, because of his former official relation to the estate, was a competent witness to all pertinent matters within his knowledge. We think the testimony was not competent as direct evidence. It was competent for the purpose of discrediting McAllister, when examined by the plaintiff, to prove that such admissions had been made, if McAllister had denied them. McAllister, when introduced by the plaintiff, swore that no such admissions had been made, and upon that point was contradicted by Clopton. A. L. Witherspoon v. Thomas G. Blewett, MSS. opinion. We do not see how the testimony excluded, which forms the matter of the third assignment of error, could, if admitted, have any material weight in the result.

The law is correctly propounded in the third instruction. In the earlier English cases, as in Pagott's case, 11 Rep. 27,

it was ruled, that the material alteration of an instrument by a stranger, so vitiated it, that it could not become the foundation of a suit; subsequently, doubt was thrown upon the doctrine, in Hutchins v. Scott, 2 M. & W. 809. In this country it is well settled that an alteration by a stranger will not avoid the instrument, if it can be made out by evidence what the original instrument was. City of Boston v. Benson, 12 Cush. 61. Davis v. Carlisle, 6 Ala. 707 ; Reese v. Overbaugh, 6 Cow. 746; Nichols v. Johnson. 10 Conn. Rep. 192. The phrase, " with interest at 8 per cent." in a note, implies interest from its date, 2 Parsons on bills and notes, 392 and notes. There was no error, therefore, in the fourth instruction to the jury, the subject embraced in the fifth charge has been considered, to a considerable extent, in what has already been said on the pleas. If the creditor or principal, with his assent, imposed upon the sureties a contract which they did not intend to make, by fraudulently and knowingly filling up the note for a larger amount than contemplated, it does not matter whether the defendants were placed thereby in a worse predicament or not, or whether they have been injured or not, or their liability increased or not. The question is, have they been induced to enter into the contract sued on, under the impression that it conformed to what they had engaged for, and supposed they were making. But the instruction may have been misleading, for it is plain, if the defendants proved to the satisfaction of the jury, that they had informed the administrators, of the extent of the liability they would incur, and the administrators procured their signatures to the note, holding out the idea that it embraced the true amount only, the liability was increased, at least, to the extent of the excess.

The tenth instruction does not conform to the views of the law which we have expressed, inasmuch as it affirms that Kendrick must have combined with the administrators, or one of them, to perpetrate the deceit and imposition; whereas, the rule is, that the deception and fraud may be the sole act of the administrators. If the principal debtor is guilty, the

payees of the note are not affected unless they assented, or had knowledge. This charge conforms to the ruling of the circuit court on the second plea, and is a repetition of a misapprehension of the law.

Both the second and fourth pleas assume that the excess of the $400 included in the note, if placed there, under the circumstances stated, avoided the contract in toto. If part of the debt be tainted, and part rests upon a valid consideration, and the two are capable of separation, a recovery may be had for so much as is good. In this and analogous cases, resting upon the same reason, the defense, whether of fraud, failure or want of consideration, must extend to the entire contract, so that one part of it is as much affected by the defense as the other.

The very point under review, on a similar state of facts, was considered in Johnson v. Blasdale and Grubbs, 1 S. & M., 20, where $300 was inserted in the note in excess of the purchases made at the administrator's sale, the sureties contended (as here) that this vitiated the contract and discharged them. The court propounded the question thus: "Whether the note is voidable *in toto*, or only for the excess beyond the sum which was authorized," and held; that it was only voidable for the excess. Also, Goss and Hammond v. Whitehead, 33 Miss. Rep., 215.

We think there is error; judgment is reversed. Upon return of the case to the Circuit Court, the pleas should be amended so as to conform to the views herein expressed.