## EVERMAN & CO. VS. E. A. ROBB.

1. MORTGAGE:   *To secure payment of rents.   On chattels not* in esse.   *Future acquisitions.*
 Where a lessee holds for a term of years by a written lease, acknowledged and recorded, he holds such an interest in the land as will enable him to execute a valid mortgage conveying the crops to be grown by him on the land in future years, and though the subject of the mortgage be a chattel not *in esse,* but a future acquisition, yet he has acquired such an interest in the soil as will enable him to mortgage the fruits of it to be afterwards produced.

2. SAME:   *Chattel mortgage.*
 At common law a chattel mortgage could only operate on property in actual existence at the time.   It is not valid as to goods not then *in esse,* or which do not belong to the mortgagor actually or potentially.   The legal consequence of the forfeiture of the condition of a chattel mortgage is to vest in the mortgagee the right to the possession and an absolute right to the property. He may sell and pass title without foreclosure, especially after notice to the mortgagor to redeem.   But in modern times courts of equity, to give effect.

to contracts where public policy would not be contravened or fraud perpetrated, have imparted the virtue of securities, by way of liens, to many instruments which courts of law would not regard as operating as a grant or assignment of the thing. When it is said that a mortgage of a thing not *in esse* is void at law, nothing more is meant than that the instrument does not pass the title to the property.

3. Alteration of an Instrument: *Effect thereof.*

If an instrument be materially altered after its execution, no money can be had upon it unless it was accidental, or done by the party claiming under it, or with his consent. An alteration after delivery, and whilst in the custody of the party asserting a right under it, devolves upon him the duty of explanation.

4. Evidence: *Test of its admissibility.*

The test of the admissibility of evidence is relevancy and pertinency, and not weight and conclusiveness. It is not for the court to decide whether evidence is sufficient to convince the jury.

5. Same: Same: *Case in judgment.*

In 1871 R. demised his plantation to B. & D. for five years, at $3,500 per annum. The lease was acknowledged and recorded. It created a first lien on the stock, implements, and crops to be grown annually, to secure the rents. In 1873 B. & D. gave a mortgage to E. & Co. for supplies to the amount of $600. Six bales of the cotton were delivered to E. & Co., when R. seized it for rent, in the possession of E. & Co. *Held,* that the mortgage of R. created a lien superior to that of E. & Co., and that he is entitled to the crops embraced in his mortgage for the payment of the annual rents. The lien retained by R. on the annual crops to be grown during the term, as security for his rents, was not only good between the immediate parties, but was superior and paramount to the mortgage to E. & Co., they, by reason of the registration, having notice of R.'s equity. Registration of the lease was notice to subsequent purchasers and creditors, who dealt with the lessees in respect to the cotton at their peril.

Error to the Circuit Court of *Washington* County.

Hon. C. C. Shackleford, Judge.

The opinion of the court contains a very full statement of all the material facts in the case.

The errors assigned are substantially as follows:

1. The court erred in allowing plaintiff to read in evidence the lease of E. A. Robb.

2. In construing the lease as a mortgage to Robb.

3. In allowing proof that the cotton had been delivered to claimants before the sheriff levied on it.

4. In not allowing claimants to read in evidence the mortgage to them on the crop of 1873 for supplies furnished.

5. In excluding evidence offered by defendants.

6. In refusing 1st instruction asked by claimants.

7. In refusing claimants' 2d instruction.

8. In overruling the motion for new trial.

*Frank Johnston*, for plaintiffs in error:

The first question is, could the crop of cotton to be grown in 1873 be mortgaged to Robb on January 3, 1871? It cannot be made the subject of mortgage, and it has been so held in the following cases: Jones *v.* Richardson, 10 Metc., 481; Moody *v.* Wright, 13 ib., 29, 30; Winslow *v.* Merchants, etc., 4 ib., 306; Barnard *v.* Eaton, 2 Cush., 294; Codman *v.* Freeman, 3 Cush., 306. A crop to be grown in the future cannot be mortgaged. 20 Barb., 38. Such mortgages are invalid. Bank of Lansingburgh *v.* Crary, 1 Barb., 551; Comstock *v.* Scales, 7 Wis., 159. See, also, Gardner *v.* McEwin, 19 N. Y., 123.

Property of the same kind subsequently acquired, and substituted for the property originally mortgaged, is not bound by the mortgage. Rhines *v.* Phelps, 3 Gilm. (Ill.), 455; and to the same effect is the case of Chapin *v.* Cram, 40 Me., 14; and, also, Hobby *v.* Brown, 14 Conn., 255. The doctrine is held again in Rose *v.* Bevan, 10 Md., 466; and again by the same court in Hamilton *v.* Rogers, 8 Md., 301. The only extension of the doctrine in relation to the mortgage of property to property subsequently acquired is found in a few cases, in which it was held that where new goods were actually purchased with *the proceeds* of the goods mortgaged, and brought on the premises, the mortgage will be extended in equity to the goods thus acquired. Levy *v.* Welsh, 2 Edw. Ch., 438.

Looking to the date of the mortgage in the case at bar it is evident that Robb had no *lien* on the cotton in controversy. The levy of the writ of attachment gives a lien to the same extent as in other cases of attachment, but this must be subject to all existing rights of third persons. 42 Miss., 343, 344; 43 ib., 456. Everman & Co. rest their claim to the cotton, 1st, upon their mortgage, and, 2d, upon actual sale and delivery, and upon the 2d ground alone they would be entitled to recover,

even though there had been no previous mortgage.   The right of a tenant to mortgage or sell his effects, in good faith, has been expressly affirmed.   Marye v. Dyche, 42 Miss., 347; Stamps v. Gilman, 43 ib., 457.

*W. L. Nugent,* for defendant in error:

In Ohio the landlord has a lien reserved for his rents.   The court say the crop is the joint product of the lessor's land and the labor of the lessee.   Case v. Hait, 11 Ohio, 367.   See, also, the case of Smith v. Atkins, 18 Vt., 465.

This was a continuing contract, and the crops grown upon the land during the term, as soon as prepared for market or gathered, were charged by the parties with the payment of the rent.   The case falls fully within the rule laid down by this court in Sellers et ux. v. Lester et al., 48 Miss., 513, and the paramount equitable lien of Robb cannot be defeated.   14 Pick., 497; 1 Paige, 125; 2 Hilliard on Mort., 379, § 4; Langton v. Horton, 1 Hare, 549; Congrew v. Evetts, 10 Eng. Ch., 298.

It is urged that Robb's remedy is in equity.   This objection, however potent in the court below, on purely technical grounds cannot avail here.   The tendency of all modern adjudications is to treat all mortgages as being nothing but *securities* for debts, and not as passing any legal title on breach of the conditions attached to them.   Grant that he had a *paramount equitable lien* upon the cotton distrained for rent, and the whole case fails here.   Substantial justice has been done, and the judgment should be affirmed.   Hewett v. Cobb, 40 Miss., 61; Dozier v. Ellis, 28 ib., 730.

Robb's mortgage is upheld by the following authorities: Story on Sales, § 185; Meacham v. Parker, 14 Pick., 502; Terrell v. Eastman, 3 Metc., 121; Gratham v. Hawley, Hob., side page, 132; Planters' Bank v. Walker, 3 S. & M., 421; Bratt v. Elliott, 19 Wall., 547.

Referred, also, to the following cases, as being conclusive of the subject:   Permock v. Car, 23 How., 117; Deunham v. Railway Co., 1 Wall., 254; Tedford v. Wilson, 3 Head, 311;

Robinson *v.* Mauldin, 11 Ala., 980 ; Bryan *v.* Smith, 22 ib., 534 ; Hoyd *v.* Morrow, 26 ib., 353 ; Curtis *v.* Auban, 1 Jac. & W., 510 ; Sweethead *v.* Edmonds, 1 McCarter, 408.

SIMRALL, C. J., delivered the opinion of the court.

In January, 1871, E. A. Robb demised to Briscoe Dennis and several others, for the term of five years, the Betsy plantation, or a large part, at the annual rent of $3,500. The lease, which was sealed and acknowledged by the parties, and recorded, reserved or created a first lien on the stock, implements, "and crops of corn and cotton grown annually on the land, as security for the rent."

In January, 1873, these lessees gave to Everman & Co. a mortgage and agricultural lien on the crops to be grown that year, to the extent of $600 in supplies to be advanced, and also for an antecedent indebtedness. Six bales of cotton, the product of the year 1873, had been delivered by these lessees to Everman & Co. on account, in whose possession it was seized, under an attachment for rent, by Robb. Everman & Co. claimed the cotton ; a trial was had on that issue, which resulted in a verdict for Robb.

It was irregular, and not in accordance with the statute, for Everman & Co. to have preferred their claim in this manner. The claimant's bond and issue applies where property has been seized under the ordinary attachment against an absconding or non-resident debtor, or under writs of *fieri facias.* A stranger (that is a person other than the tenants or one liable for the rent), claiming title to property distrained for rent, must, according to the method prescribed in § 1631, Code, 1871, pursue his right by writ of replevin, sued out, etc., before a sale of the effects.

In that form of suit the landlord would avoid the taking for rent in arrear, and the issue that would be reached, in the intendment of the statute, would be whether the goods are the property of the claimant or whether they are liable to the distress.

42

No objection was made in the circuit court, none has been made in this court, to the form of the suit.

Since all the questions were presented on the trial of this issue which could have been raised by the suit in replevin, we shall pass by the form of the pleadings and consider the case on its merits.

The instruments under which the respective parties asserted right to the property having been regularly executed and recorded, the primary question is whether the clause of the lease reserving a lien on the crops to be produced from year to year is superior to the mortgage.

The rule at common law seems to be that a chattel mortgage can only operate on property in actual existence at the time. It is not valid as to goods not then *in esse*, or which do not then belong to the mortgagor, to which he has no potential ownership.    Lane *v.* Thornton, 1 Man., Gr. & S., 379. In the early case of Grantham *v.* Hanley, Hob., 132, it was said " a man cannot grant all the wool that shall grow upon sheep that he may buy thereafter."    But if the grant be of all the wool of his sheep for seven years, this is good, for that means the wool of the sheep the grantor then has.

The distinction is between the grant of an interest in property which the grantor then has in existence, or potentially, and an interest in property thereafter to be acquired.    The ownership must be actual or potential.    Oliver *v.* Sill, 8 Wend., 111, 112.

A mortgage is technically a grant.    It is a sale or assignment of the thing, so that under our statute, after condition broken, the title vests absolutely in the mortgagee.

The legal consequence of the forfeiture of the condition of a chattel mortgage is to vest in the mortgagee the right to the possession and an absolute right to the property.    He may sell and pass title without decree of foreclosure, especially after notice to the mortgagor to redeem.    O'Reilly *v.* Hendricks, 2 S. & M., 388 ; Thornhill *v.* Gillman, 4 ib., 153.

A grant implies a disposition of a thing *in esse*, or poten-

tially so, as the clip of the wool, for a term of years, of the sheep which the man then has. The grantor owns the property from which the wool naturally grows, so that he may be said to be the potential owner.

An agreement to mortgage a particular parcel of land will in equity be treated as an equitable mortgage. The court, proceeding on the footing somewhat of a specific performance, will give the benefit of the security which the party covenanted to execute.

But the contract must point to the specific property. 1 Paige, 128 ; Adams *v.* Johnson, 41 Miss., 258.

. Courts of equity in modern times, to give effect to contracts and engagements, where public policy would not be contravened, and the door not be opened to the perpetration of fraud, have imparted the virtue of securities, by way of liens, to many instruments which courts of law would not regard as operating as a grant or assignment of the thing, as in case of a technical mortgage. When it is said that a mortgage of a thing not *in esse* is void at law, no more is meant than that the instrument does not have effect to pass the title to the property.

Courts of equity constantly enforce rights attaching to property where the legal title is not involved, and where the owner of the right would have no countenance or support in a court of law. The reservation of a lien for the purchase money in the deed of conveyance is of the same character as the implied equity in favor of the vendor ; neither creates a title to the property ; neither amounts to anything more than a privilege to subject the specific property to the debt. These are instances of liens created without a grant ; where they attach, they are quite as effectual securities for the debt as a mortgage. Courts of equity have in certain instances upheld contracts intended as grants, by way of mortgage, which were ineffectual as such, by giving them virtue as liens. These are some of the illustrations :

. A ship owner may assign the freight of a voyage which the

vessel is prosecuting. *In re* Ship Ware, 8 Price, 269. Or he may sell, or hypothecate for advances, the oil and head matter to be taken in a whaling voyage. Laughton *v.* Horton, 1 Hare, 549.

And the work animals on the plantation, and such others as may be brought on it for farm use. Settles et ux. *v.* Lester, 48 Miss., 523.

In these cases the instruments, though in the form of assignments or mortgages of the several subjects, could not operate to pass the legal title, for the reason above stated. Yet courts of chancery dealt with them as equitable securities or liens.

In Cayce, trustee, *v.* Stovall, 50 Miss., 400, whilst adopting the authority of these cases, the court said "that it must not be understood as committing itself to the broad doctrine 'that a mortgage of chattels thereafter to be acquired is unlimited and in all circumstances to be sustained.'"

An assignment or mortgage of all the goods which a man may hereafter acquire would be too vague and uncertain, and invalid for that reason as well as, perhaps, on grounds of public policy. But contingent estates and interests, though not assignable at law, may be the subject of a contract for a valuable consideration, which will be specifically enforced when the event happens. 2 Story's Eq., § 1040, 1046. At law the assignment of future accretions, or increase of any subject which a person owns at the time, will be respected.

The doctrine of equitable liens on things not *in esse* at the the date of the contract, and the extent to which they will be upheld against subsequent creditors, has not as yet been sufficiently developed to admit of a precise generalization into principles. A careful study of the cases will disclose—

1st. That in each instance the contract had reference to some particular designated property, which may, in the ordinary course of things and with reasonable certainty, come into existence.

2d. The assignor, or mortgagor, must at the date of the contract have an actual interest in or concerning the subject.

There must be an interest " *in presenti*," of which the future acquisition is the product, or in such wise incident to or connected with it, constituting a tangible and substantial predicate of a contract. Morrill *v.* Noyes, 56 Me., 468.

Is not the reservation by Robb of the lien within the principle just stated? The substance of the transaction is this: Robb demised the land for the term at the stipulated rent. The lessees covenanted that the annual products should be pledged as security to the landlord. The lessees, as owners of the term, had the same power of disposition over the annual fruits of the soil—*fructus industriæ*—as though they had been owners of the fee, with this modification however, that the products of the soil are considered as the natural fund, in part, for the payment of rent, in respect of which the landlord has special privileges over creditors.

Rent is said to issue out of the land. It were not, perhaps, extravagant to say that the landlord has a sort of contingent interest in the crops, which remains dormant until exerted to enforce what may be due him. These special privileges constitute his security. The incumbrance of the crops with an express lien is but to give strength and completeness to the imperfect rights of the landlord.

These tenants were purchasers of the land for the term of five years, to be used for agricultural purposes. As security for the price to be paid they pledged the crops. The thing hypothecated was to spring out of, or be the product of, the soil. It was directly connected with the land which the tenants owned for the term. The crops were contingencies depending on present existing property or interest in the lessees, and therefore the subject of sale or assignment. Story on Sales, § 186.

Whilst a person cannot make a present sale of all the wool that may grow on sheep which he may hereafter buy, nor of any other thing in which his interest is wholly prospective and doubtful, there may be a valid sale of the wine a vineyard is expected to produce or the grain a field is expected to grow,

the milk of a cow for the next year or the future young of animals. Story on Sales, § 185.

It is to be remarked in all these instances that the subject of the sale sprung out of, or depended upon, some present right or property or interest which the seller had.

Many of the cases, whilst condemning a grant of goods not at the time belonging to the grantor, concede that, after the property has been acquired, the grantor may ratify it by some act done for that purpose, such as delivery to the grantee.

It seems to be solecism to say that a mortgage is void at law and yet may be operative in equity. Much of the confusion and seeming conflict in the cases result from the infelicitous use of language which does not accurately convey the idea. The invalidity at law imports nothing more than that the mortgage is ineffectual as a grant to pass the legal title. The chancery court does not put itself in conflict with that principle, but construes the instrument as imposing a lien upon the thing when acquired or produced, treating the legal title or ownership as still residing in the debtor.

If the grantor, after the thing comes into being, does something in recognition of the sale, as delivery of possession, then the transaction becomes complete at law. A court of equity does not wait for a ratification, but substantially enforces the contract as creating a lien for the benefit of the creditor.

The rule of law is stated by Lord BACON in his Maxims, Reg. 14, "The law doth not allow of grants, except there be a foundation of interest in the grantor, for the law will not accept of grant of titles or of things in action; much less will it allow a man to grant or incumber that which is no interest at all, but merely future."

The rule in equity is well exemplified by the case of Butt v. Ellis, 19 Wall., 544, a case almost identical in its facts with the one before us. The lessor had reserved a lien on the crops of cotton and corn in his lease. The cotton had been consigned by the lessee to Butt & Co., his factors, for sale, who had notice of the contract. Butt & Co. were held to be

trustees of the proceeds of the cotton for the landlord, or his assignee. The court, declaring the effect of the instrument, said : " The mortgage clauses could not operate as a mortgage, because the crops to which it relates were not then in existence. When the crops grew, the *lien* attached and bound them effectually from that time." To the same effect is Smith *v.* Atkins, 18 Vt., 465.

Prior to the enactment of the registration laws the current of all decisions was that possession by the mortgagee was essential to the validity of a chattel mortgage. If the instrument was secured, the instrument remained with the mortgagor. In controversies with subsequent creditors and purchasers registration was regarded as of the same import as possession, and if the security was in other respects fair and *bona fide* it would be unimpeachable.

Where there are no registration laws we find a great deal of discussion in the books as to the necessity of a creditor, protected by an assignment of goods thereafter to be produced or acquired, getting possession before a subsequent creditor has acquired a lien on them. Several of the cases cited by counsel, and others which we have consulted, are of that sort. The assignment of these contingent interests, being upheld, got possession before a subsequent creditor anticipated him. These statutes protect the assignee or mortgagee against subsequent liens and sales. They were not designed to make good a title which was not good before, but to shield it, when *bona fide*, against claims which subsequently accrue against the property. We held, in the case of White *v.* Thomas et al. (MSS. opinion), that the reservation of a lien in a lease on the annual crops would be enforced, in a court of chancery, between the parties. We now take the further step, and declare that the lien retained by Robb on the annual crops to be grown during the term, as security for his rent, was not only good between the immediate parties, but was superior and paramount to the mortgage of Everman & Co., they, by reason of the registration, having notice of Robb's equity. Registration

of the lease was notice to subsequent purchasers and creditors, who dealt with the lessees in respect of the cotton at their peril.

This doctrine does not contravene public policy, but, on the contrary, will be beneficial in its effects, as it may enable those with moderate means and little or no credit to engage in agriculture, by pledging the fruits of the soil for the rent; nor when, as in this case, the instrument has been recorded, can any one be deceived, for the nature of the property can be readily ascertained by consulting the public records.

It was error to exclude the testimony offered by Everman & Co. to prove that the mortgage clause of the lease had been altered. The testimony was pertinent and relevant, and would tend to prove that the instrument was void. The alleged alteration was in a material matter. Whether it would have been sufficient to satisfy the jury was not a question for the court to decide.

The test of the admissibility of testimony is relevancy and pertinency, and not weight or conclusiveness.

If the instrument had been materially altered after its execution, no recovery could be had upon it, provided it was not accidental, and provided, further, it was done by the party claiming under it, or with his privity. An alteration in such circumstances—that is, after delivery and whilst in the custody of the party asserting a right under it, devolves upon him the duty of explanation. Everman & Co. might thus, by evidence, assail the instrument under which their adversary claimed, and should have been allowed to examine the witness on the point. 1 Greenl. on Ev., § 564, and notes; Clopton v. Elkin, adm'r 49 Miss., 105, 106.

The views which we have expressed make it unnecessary to consider the instructions.

Judgment reversed, cause remanded, and a *venire de novo* awarded.