Allen, J.
 

 The legal question involved in this case is as follows: How shall interest be figured on a note and mortgage given to secure future advances to be made for the purpose of building
 
 *222
 
 construction, when the note and mortgage bear interest from the date thereof, but the sums advanced thereunder were paid out long after the execution of the note and mortgage, and when only-part of the sum upon the face of the note was ever advanced?
 

 Throughout this opinion, as the parties stand in the same position as in the court below, the plaintiff in error will be called the plaintiff, and the defendant in error the defendant.
 

 The record shows that one Walter Vretman, a building contractor, owned four lots at the corner of Ethel avenue and 'Clifton boulevard in the city of Lakewood, Cuyahoga county, Ohio, and some time prior to February 9, 1920, applied to the defendant company for four construction loans thereon, submitted plans for double houses, and was granted loans of $10,000 on each lot. On February 9, 1920, he signed four notes for $10,000 each, and four mortgages securing the same. Some time later construction was started. The first payment was made on three of these buildings on July 10, 1920.' Various sums were paid to ‘Vretman upon the loans from July 10, 1920, until the latter part of November, 1920, at which time there had been paid out on the three loans a total of $18,040.75. On the fourth loan only the expense of extending the abstract, drawing the papers, and recording fees, had been paid out, no construction having been started upon the fourth lot.
 

 On December 31, 1920, an involuntary petition in bankruptcy was filed against Vretman. Early in January, 1921, he was adjudged a bankrupt, and a, trustee was appointed to wind up his affairs.
 
 *223
 
 Shortly after the signing of the notes and mortgages the plaintiff in this action, Claude A. Carr, having advanced Vretman a considerable sum took title to a half interest in the premises in question to secure the loan. Following the bankruptcy adjudication, Carr bought Vretman’s half interest from the trustee, and on June 6, 1921, tendered the defendant the sum of $20,250 and asked for the cancellation of the mortgages. The tender was refused as being insufficient in amount. The defendant did, however, cancel the mortgage upon the lot on which no building had been started upon payment to it of abstract expenses, expense of drawing papers, etc. Carr then brought this action in equity to compel the cancellation of the other three mortgages.
 

 It was agreed between the parties to the loans and mortgages, at the time of the execution thereof, that the principal of the loans could not be drawn by the plaintiff at any one time, but could only be obtained, first, if the abstract, which was put in for extension after the signing of the notes and recording of the mortgages, should bb returned showing the mortgages to be a first lien upon the premises; second, that advances should be made only in installments conforming with a certain schedule adopted by the defendant as the work on the erection of the houses to be built progressed, so that the value of the security would at all times bear approximately the same ratio to the sum advanced under the mortgages.
 

 The plaintiff tendered to the defendant $20,250 upon June 6, 1921. The notes bearing the date of February 9, 1920, were payable upon February
 
 *224
 
 9, 1921. The Savings & Loan Company paid out to Vretman the following sums between July 10, 1920, and December 23, 1920 :
 

 Loan No. 1 ..................................................$7,580.25
 

 Loan No. 2 .................................................. 6,380.25
 

 Loan No. 3 .................................................... 4,080.25
 

 It was admitted by both parties at the trial that the maker of the notes, Vretman, in whose shoes Carr stands in the instant case, had agreed to pay 8 per cent, interest; -that 2 per cent, was paid on the side and the notes were made to read 6 per cent, for the reason that Vretman was borrowing this money to build houses for sale, and could sell them more readily with 6 per cent, mortgages than with 8 per cent, mortgages. This feature of the case is' not urged and, in fact, was waived by the plaintiff. Certain inspection fees and other expenses, including the cost of appraisal, initial payment upon a share of stock in the Savings
 
 &
 
 Loan Company, revenue stamps, cost of recording mortgage, cost of preparation of statements of title and cost of insurance, were figured in the amount due, and for the purposes of this discussion are not contested.
 

 The amount of the sums advanced, plus interest at 8 per cent, from the date of the advancement, figured to the date of tender, amounted to $19,413.-17; $18,040.75 was the total amount paid out upon the loans.
 

 The plaintiff claims that the tender of $20,250 as made amounted to more than the principal and interest due, including inspection and other fees mentioned above and not contested. The gist of his contention is that he should not be compelled to
 
 *225
 
 pay interest upon the advancements made before the date that they were actually paid out to him, or that, if he is compelled to pay interest beginning with February 9, 1920, the date of the execution of the notes and mortgages, the interest should be computed only upon the sums actually paid out and not upon the face amount of the notes. It is conceded that, figuring according to the plaintiff’s theory, his tender was more than sufficient.
 

 The defendant claims that interest is due to it as computed by the journal entry of the Court of Appeals upon the face of the notes at the rate of 6 per cent, per annum, payable quarterly, as specified in the notes and mortgages, from the'date of the notes and mortgages until June 5, 1921, which was the date of the alleged tender, and thereafter upon the amounts actually paid out under each loan at the rate of 6 per cent, per annum, payable quarterly, as aforesaid, to the first day of the term of court in which the judgment was rendered.
 

 The date of tender of June 5, 1921, as the record shows, was the first time that the Savings & Loan Association was advised that the unexpended balance of the sum borrowed by Vretman would not, be drawn.
 

 A copy of one of the notes which is identical with all of the notes in question, is as follows:
 

 “Cleveland, Ohio, Feb. 9, 1920.
 

 “One year after date for value received I promise to pay to the order of the Doan Savings & Loan Company, 1861 East 6th St., ten thousand and no-100 dollars, with interest at the rate of-six per centum per annum, payable quarterly on
 
 *226
 
 March 15th, June 15th, Sept. 15th, and Dec. 15th hereafter at 1861 East 6th St., and I hereby authorize any attorney at law to appear in any court of record in the state of Ohio after the above obligation becomes due and waive the issuing and service of process and confess a judgment against me in favor of the holder hereof, for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal.
 

 “[Signed] Walter Vretman.”
 

 In this note it will be observed that the parties agreed to pay the principal sum, with interest at the rate of 6 per cent, per annum.
 

 No Ohio decision exists upon this exact question. The cases under the building and loan statute do not apply, for no question of a fine, assessment, or premium appears in the facts herein. We thereforcare remitted to the general law for the determination of this case.
 

 Now the power to make contracts for the payment of interest includes the power to fix the date from which interest shall be computed. It is true that, where a person lends money to another, interest is in general allowed on the sum lent from the date of the transaction of the lending. 22 Cyc., 1541. This rule obtains in the absence of any agreement to the contrary. Where, however, the contract expressly provides that interest shall run from a certain date, such provision will control. 22 Cyc., 1537. Thus interest so stipulated may be recovered as if it were principal. 15 Ruling Case Law, p. 20. See, also,
 
 Fake
 
 v.
 
 Eddy’s
 
 
 *227
 

 Executor,
 
 15 Wend., (N. Y.) 76, which holds as follows:
 

 “An action may he sustained for the recovery of
 
 interest,-
 
 although the
 
 principal
 
 of a debt has been paid, where the payment of interest is stipulated for in the contract; it is only when
 
 interest
 
 is not stipulated for in the contract, and is recoverable merely as
 
 damages,
 
 or as an
 
 incident
 
 to the debt, that a creditor is precluded from sustaining an action for its recovery, after accepting the principal.”
 

 To the same effect is the case of
 
 Jourolmon
 
 v.
 
 Ewing,
 
 80 F., 604, 26 C. C. A., 23:
 

 “(1) Where a note for purchase money of lands provides for the payment of interest from the date of the contract of sale, and the vendee was given possession in which he has not been disturbed, interest runs from that date, not from the time when a good title is made; and a condition that any parcels of the land in litigation, or adversely owned or possessed, shall not be paid for until the title is cleared, simply postpones the time of payment, without affecting the amount.
 

 “(2) The general rule is that, where there is an express stipulation in regard to the payment of interest, it will be regarded as a part of the contract, and enforced accordingly; but, where there is no such stipulation, and interest is treated as damages, it will be awarded or denied, according to the equity of the circumstances.”
 

 These rules are based upon the fact that interest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention.
 

 
 *228
 
 Where an instrument is payable at a future day, with interest, and nothing is said therein as to the commencement of the interest period-, interest is computed from the date of the instrument. Perley on Interest, p. 8;
 
 Horn
 
 v.
 
 Nash,
 
 1 Iowa, 204, 63 Am. Dec., 437;
 
 Miller
 
 v.
 
 Cavanaugh,
 
 99 Ky., 377, 35 S. W., 920, 59 Am. St. Rep., 463;
 
 Campbell Printing Press & Mfg. Co.
 
 v.
 
 Jones,
 
 79 Ala., 475;
 
 Washband
 
 v.
 
 Washband,
 
 24 Conn., 500;
 
 Main
 
 v.
 
 Casserly,
 
 67 Cal., 127, 7 P., 426;
 
 Clopton
 
 v.
 
 Elkin,
 
 49 Miss., 95;
 
 Conners
 
 v.
 
 Holland,
 
 113 Mass., 50; 15 Ruling Case Law, p. 25.
 

 In this case the interest upon the instruments is therefore to be computed from the date of the instruments, which was February 9, 1920. Biff the plaintiff argues that he had no use of the money advanced prior to the time that he received it from the defendant. He urges that, although Vretman contracted for the money in February, 1920, he did hot receive the first installment until July, 1920. In other words, he claims that there was no consideration for the agreement that interest should run, not from the date at which the money was actually received, but from the date of the execution of the instrument.
 

 The Court of Appeals found against this contention as a matter of fact, and rendered judgment on the issues joined for the defendant. Moreover, the record shows in uncontroverted testimony that the plaintiff had some use of this money, even though it was not in his actual possession. After February 9, 1920, it was withheld from use by the defendant in readiness for the plaintiff. The money was available for the plaintiff’s use as he pro
 
 *229
 
 ceeded with his building, and the defendants were in no way responsible for the delay in plaintiff’s starting construction. The testimony in the record upon this point, omitting objections, is as follows:
 

 “Q. (By the Court). What I want to get at— you journaled this $30,000.00 loan? A. We journaled three loans of $10,000.00 each and identified each with a sublot on the date the loan was made, because we have to do that.
 

 “Q. You say that is charged against your cash? A. Yes, set up as a special credit.
 

 “Q. Then you knew when you made that charge that it would not appear against the cash, that these items would not be paid out? A. No; no.
 

 “Q. The construction would have to run along a period of many months? A. I didn’t know that. I didn’t know that, judge. Immediately the loan is made it is practically taken out of my cash and set up as a liability and that money is withheld from being loaned to anyone else. It is in the bank.
 

 “Q. You mean actually set aside? A. Yes.
 

 “Q. How was that done? A. It is not drawn, it is retained as cash on hand.
 

 “Q. The book entry? A. No, sir; the actual money.
 

 “Q. Where is the actual money? A. In the bank.
 

 “Q. What bank? A. Wherever your depositary is. In this particular case it was in the Guardian Bank.
 

 “Mr. Pelton: In view of this testimony I want, at this time, to insist upon Mr. Moxon showing his cash reserve just before and just after.
 

 
 *230
 
 “Witness: I can show it to you. We keep a daily—
 

 “Q. (By Mr. Grentsch.) After the credits of $10,000.00 each .on these three loans were set up on your books, how was that money treated, was it treated (objection by plaintiff) as a liability and as having been paid out or as current funds? * * * A. It is set up as a liability in the same manner and form as though a man brought in $10,000 and deposited it.
 

 “Q. And in making subsequent loans or in considering applications for subsequent loans how is this money treated, as being money on hand or as having been paid out? A. This money is committed and loans not made unless so as to care for it. # # #
 

 “Q. What is your answer there? A. Let me have your question again.
 

 “Q. (Qüestion read.) A. It is treated as a commitment or as a pledge and is considered— the amount due borrowers is always considered before any other loans are approved.”
 

 This testimony is uncontroverted in the entire record and it establishes consideration for the agreement. The use of the money constitutes a valid consideration. Perley on Interest, p. 7.
 

 The loans were at all times from February 9,1920, to February 9, 1921, the date of the maturity of the notes, subject to the plaintiff’s call. Since by its agreement with the plaintiff, the defendant was precluded during that year from having the use of its money, and since it was precluded during that time from loaning money to other applicants, it was entitled to charge the plaintiff interest according to the
 
 *231
 
 terms of its contract during that time. It was not entitled to interest upon the face of the notes after the expiration' of the year, for it was then relieved from the obligation of withholding its money from use in order that it might be upon call for the plaintiff.
 

 In other words the obligation of the defendant to withhold this money from use under this contract terminated with the maturity of the note. Its contract was that it would loan the money in question to the plaintiff for one year only and for no more. After that time it was free from legal obligation under the contract and was free to lend to other parties the money not actually drawn.
 

 During the period when it was at liberty to loan the funds in question to others, it cannot charge the plaintiff for the use of money not actually withdrawn as the plaintiff had no use of it after the year had expired. In other words, after the year had expired there was no consideration for the charging of interest on money not actually advanced.
 

 The defendant in answer to this proposition claims that as the record shows that at the expiration of one year from the date of the note the maker was in bankruptcy, the properties unfinished, and that a number of liens, had been filed against the properties, the Savings and Loan Company could hardly be said to be relieved from the obligation of paying out further money after the maturity of the note.
 

 In one sense .this statement is true. In order to preserve the security of its loan the defendant was perhaps compelled to pay out further money after
 
 *232
 
 the year had expired. This money if paid out was not paid to the maker of the note. The unanswered fact remains that after the maturity of the note the defendant was under no' obligation to pay to the maker any part of the loan promised or to withhold any part of the loan promised subject to the plaintiff’s call.
 

 The defendant was entitled to interest from the date of the execution of the notes, according to the terms of the notes, only until the maturity thereof from February 9, 1920, to February 9, 1921. After the'maturity of the notes the defendant was entitled to interest only upon the sums actually' advanced under the notes. Since the interest was computed at six per cent, upon the face of the amount of the notes, under the judgment of the Court of Appeals, from February 9, 1920, to June 5, 1921, almost four months after the notes had matured, the judgment of the Court of Appeals will be modified in accordance with this opinion.
 

 Judgment modified.
 

 Marshall, C. J., Matthias, Day and Robinson, JJ., concur.
 

 Kinkade, J., not participating.