MISSISSIPPI VALLEY COMPANY *v.* CHICAGO, ST. LOUIS, AND NEW ORLEANS RAILROAD COMPANY.

1. MORTGAGE.   *By railroad company.   After-acquired property.   Case in judgment.*

The New Orleans, Jackson, and Great Northern Railroad Company executed a mortgage to the Chicago, St. Louis, and New Orleans Railroad Company, granting "all of its right of way, lands, property, franchises, rights, and appurtenances, and also all the buildings, structures, and improvements thereon, and all and singular, the cars, locomotives, engines, warehouses, depots, machine-shops and machinery, fixtures, utensils, and effects of every kind, nature, and description whatever, in use upon the said railroad way, or in anywise attached or appurtenant to the same, intending hereby to include all its present real and personal estate and franchises now owned or hereafter to be acquired, without any exception or reservation whatever."   At an execution-sale under a judgment against the mortgageor, the Mississippi Valley Company bought, as the property of the debtor, a hotel, a brick storehouse, some vacant town-lots, and a farm of three hundred acres, and thereupon brought an action of ejectment to recover the same.   The property was not owned by the mortgageor at the date of the mortgage, but was subsequently acquired, and was claimed by the mortgagee by virtue of the mortgage.   The hotel was not used as a railroad eating-house, there being no depot at the town where it was located, but was used as an ordinary hotel for the entertainment of guests; and the other property was rented out for the several purposes for which it was adapted. Except that the rents were paid to the railroad company, it derived no benefit

Syllabus.

from the property. *Held,* that such property was not appurtenant, nor necessary, nor legitimate to the building, operation, or business of the railroad company, and, as against subsequent purchasers and creditors, did not pass under the mortgage as after-acquired property.

2. SAME. *By railroad company. Future acquisitions. Principle of law.*

The mortgage by a railroad company of all of its property, rights, and franchises, and *future acquisitions appurtenant* thereto, is governed by the same principles of law as apply to a mortgage by an individual of his business, with the property appurtenant and future additions and accretions to the same.

3. SAME. *By railroad company. Future acquisitions. Charter construed.*

It was insisted in the case above stated, that by an amendment to its charter, granted before the execution of the mortgage, the mortgageor was empowered to acquire the property in controversy, and that the mortgage covered all the property that the grantor was authorized to hold. The amended charter was enacted with reference to a proposed extension of the mortgageor's railroad from Canton to Aberdeen, and vested the company with the right to acquire and hold "at each termination of said railroad, and at any other place along the line of said railroad, or in the vicinity thereof, any quantity of land, not exceeding in any one place five hundred acres, to be used for all necessary purposes of said railroad, or to be disposed of at pleasure for the purpose of constructing and maintaining said railroad." The property in controversy was acquired on that part of the railroad which had been completed before the amendment of the charter, and was a hundred miles from the proposed extension. *Held,* that it is doubtful whether the amendment authorized the acquisition of real estate except "at the terminations" of the proposed extension and along the route between those points. But if it granted such power, the property acquired must have been held and used "for the necessary purposes of said railroad," or held "to be disposed of at pleasure for the purpose of constructing and maintaining said railroad." If held for the former purpose, it was misappropriated, and if for the latter, the corporation's rights in respect thereto would have been the same as those of an individual; and as the mortgage in this case, if it had been made by an individual, would be void as to third persons, it must be held void as the mortgage of a railroad company.

4. SAME. *Foreclosure in United States court. Possession of receiver. Sale under execution.*

At the time of the sale under execution above referred to, which was based upon a judgment in a State court, a proceeding was pending in the Circuit Court of the United States to foreclose the mortgage above mentioned, and a receiver therein appointed had been ordered to take possession of the property embraced in the mortgage; but the order did not specifically refer to the property in controversy here, and it was not specifically alluded to in the proceedings until the filing of the receiver's inventory, a year after the execution-sale. The receiver had not at the time of such sale taken, and never did take, visible possession of the property sold, except by receiving the rents thereof; and he did nothing to admonish the public that the property was claimed or embraced in

the mortgage. *Held,* that under these circumstances, and as the property was not embraced in the mortgage, the purchaser at the execution-sale got a good title.

APPEAL from the Circuit Court of Pike County.

Hon. J. F. SESSIONS, Special Judge, by agreement of the parties, Hon. J. B. CHRISMAN being disqualified.

A statement of the case will be found in the opinion of the court.

*Craft & Cooper,* for the appellant.

Assuming that the railroad company had the power to mortgage after-acquired land, we submit that the language of the granting-clause of the mortgage, taken with all its words and all its scope, does not carry this after-acquired land. See the opinion of Judge Hammond, of the District Court of the United States for the District of West Tennessee, at Memphis, in *Calhoun* v. *Memphis and Paducah Railroad Company,* 9 Cent. L. J. (July 25). I cite, in addition to the authorities there cited, 34 Vt. 484; 3 Gratt. 518; 25 Barb. 284, 484; 32 N. H. 512; 50 Mo. 30; 3 Zab. 510; 3 Green Ch. 402; 4 Metc. 564; 15 Wis. 438. In last case cited, see brief of counsel, page 437.

Judge Story's rule, stated in the case of *Mitchell* v. *Winston,* 2 Story, 644, is this : " It seems to me a clear result of all the authorities, that whenever the parties, by their contract, intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor or not; or, if personal property, whether it is then in being or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto *against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice,* or in bankruptcy."

On page 312 of 25 Barb. it is said in reference to after-acquired lands purchased to secure right of way, and as against a mortgage in general terms like the one now considered : " In respect to all such lands outside of the legal limits of their rail-

road track and branches, and excepting land used for shops, de-pots, stations, turnouts for wood or water, or other legitimate purposes, the lien of the defendant's judgment must prevail. The plaintiff has no legal or equitable lien upon such lands, and the lands are liable, therefore, to the legal claims of the other creditors of the corporation." And see page 310 of same book.

Such a mortgage may be good between the parties and those claiming as volunteers, or with notice, under the mort-gage, as Judge Story says, but not good as to others. As to others, even the registration of such a mortgage is not notice. 3 Gratt. 518, 545. This court has not broadly adopted Story's rule. *Sillers* v. *Lester*, 48 Miss. 531.

Can the act of 1871, amendatory of the charter of the mortgageor, here in any way affect the question as to what is "appurtenant" to a railroad, or as to what will pass by the general description in this mortgage, which was made before the property was acquired by the road? Certainly a hotel, and store, and engine-house, and farm do not become tech-nically appurtenant simply because the railroad may acquire them. In the case of *Walsh* v. *Barton*, 24 Ohio St. 28, 42, *et seq.*, the grant of the mortgage was of " all property, real and personal, * * * used or appropriated for the operating or maintaining the said road," and these words were held to exclude property not so used. These words make, I submit, a definition of what is " appurtenant ;" and when a mortgage, in general terms, of after-acquired property is made, nothing after acquired, as against a judgment creditor, will pass under the mortgage that is not appurtenant. This is the utmost scope of the mortgage, and the utmost scope of the notice given by the registration of the mortgage.

The order appointing the receiver, it will be seen, did not direct this property, *eo nomine*, to be taken. It purports, on its face, to adjudicate nothing ; to settle no rights ; to be made solely to conserve and continue the operation of the railroad. The receiver took no possession that was notice to

anybody. The property had been rented to persons not connected with the railroad, and used for other than railroad purposes, and the only change made was in diverting the rents from the treasury of the railroad to the hands of the receiver. The foreclosure bill asserted no specific claim to this specific property. Whether this specific property was embraced in the mortgage has never been made a question in the foreclosure proceedings, nor passed upon, further than the inventory of the receiver and this deed of the commissioner have passed upon it, filed long after our purchase. If, as matter of legal construction, this property did not pass by the mortgage, of course the receiver was a trespasser, and nothing done in the Federal court has availed to vest defendant with title.

*W. P. Harris*, for the appellee.

The mortgage was executed and recorded in Pike County, in May, 1872. The bill to enforce it was filed March 7, 1876, in the United States Circuit Courts in Mississippi and Louisiana. On due notice, these courts appointed Alexander receiver on the 11th and 17th of March, 1876. The Mississippi Valley Company was made agent of this receiver, and collected rents monthly down to the day of sale, March 23, 1877, and remitted them to the receiver. The judgment of Faler and Mangold was not enrolled in Pike County until the 15th of April, 1876; the levy was made May 23, the sale August 7, 1876. This levy and sale, under the lien acquired while the Federal courts were in possession of the property, were utterly void, and conferred no title. *Wiswall* v. *Sampson*, 14 How. (U. S.) 52; High on Rec. 92, 93, 96. The mortgage contained two stipulations — the sixth and seventh — which are decisive of the intention to create a lien, and on a settled principle, of universal application, do create it. The sixth stipulation covenants that the mortgageor company will hold all after-acquired lands, etc., "subject to the lien and trusts" of the mortgage. The seventh stipulation convenants that the mortgageor company will make all the assurances and conveyances of such future-acquired property which the trustees may demand. The trus-

tees filed the bill, and demanded possession of all the property embraced within the scope of the mortgage.

Whether a lien has been created on after-acquired property is a question of intention, says Jones, summing up the result of cases. 1 Jones on Mort. 153. See also 2 Story, 630 ; *Holroyd* v. *Marshall*, 10 H. L. Cas. 191 ; *Langton* v. *Horton*, 1 Hare, 549. In this case, the result would be the same whether the mortgage shall be held to be an executory contract, or as creating a lien to attach as the property shall be acquired. The railroad company had no general power or capacity to acquire lands. It was limited expressly from the beginning, and differs from a general capacity to acquire in any possible way or pursuit, as is the case with an individual. The charter, therefore, is the source of a limited power of acquisition of lands. This mortgage was made with reference to that power, necessarily. The mortgage and the charter make a sufficiently definite indication. Jones on Rail. Secur. 130, 131 ; 25 Barb. 130. The cases cited in opposition to this view all proceed upon the construction of the deed. 47 Pa. St. 465 ; 24 Ohio St. 28 ; *Parish* v. *Wheeler*, 22 N. Y. 494 ; 12 Wis. 649.

It was not necessary that the mortgage should refer in terms to the power in the charter. *Andrews* v. *Brumfield*, 32 Miss. 107. A man may not mortgage his general capacity to acquire by every enterprise, but he may mortgage property he may inherit from A., or the stock and fruits of a business. The railroad company could acquire lands only by a special grant in its charter, and whether the quantity which might be thus acquired be great or small, it is sufficiently pointed out as the source, and it is definite.

The workshops of the railroad company were established at McComb City. A timber supply was needed. The three hundred and thirteen acres was a timber tract, and originally supplied the Mississippi Valley Company, and now supplies the defendant company. True, there is a dwelling on it, with a " few acres " in cultivation. There was a fire-engine house — evidently with reference to the workshops. The hotel site and

brick store happened to be on this body of land sold in a lump.

The first section of the amended charter of the New Orleans, Jackson, and Great Northern Railroad Company is a grant of power to the company having a line of road from New Orleans to a point on the Mobile and Ohio Railroad, near Aberdeen, as its northern terminus. There are no restrictive words. This section gives power to acquire lands at either terminus, or at any point on its line, not exceeding five hundred acres at any one place. The legislation may be criticised, but that does not advance the solution of any question here. Acts 1871.

It is a profitless refinement to hold that a railroad company may not bind acquisitions, the source of which is indicated by the charter. To this same company, with its line and termini unchanged, the Legislature in 1854 gave the power to acquire thirty acres for depot purposes.

CHALMERS, C. J., delivered the opinion of the court.

This is an action of ejectment, in which the plaintiff claims title by virtue of an execution-sale under a judgment against the former owner of the property, and the defendant claims under a mortgage executed by the same owner. The mortgage was prior in date to the judgment, and, if operative on the property here involved, takes precedence of it. The property was not owned by the mortgageor (the New Orleans, Jackson, and Great Northern Railroad Company) at the date of the mortgage, but it is claimed that it passed as after-acquired property by virtue of the terms of the instrument. Whether it did so pass is the question presented. The granting clause of the mortgage conveys, or attempts to convey, all the property of the railroad then owned or subsequently acquired, in these words: "All of its right of way, lands, property, franchises, rights, and appurtenances, and also all the buildings, structures, and improvements thereon, and all and singular, the cars, locomotives, engines, warehouses, depots, machine-shops and machinery, fixtures, utensils, and effects of every kind, nature, and description whatever, in use upon the

said railroad way, or in anywise attached or appertaining to the same, intending hereby to include all its present real and personal estate and franchises, now owned or hereafter to be acquired, without any exception or reservation whatever."

Are the words, " intending hereby to include all its present real and personal estate and franchises, now owned or hereafter to be acquired, without any exception or reservation," sufficiently definite and descriptive to pass the after-acquired property of the corporation? Certainly they are broad and comprehensive enough, but are they not too much so? That a natural person or a corporation may mortgage property to be subsequently acquired is now too well settled to require elucidation or citation of authorities; but neither by one nor the other can this be accomplished by words of a character so vague and general as to afford to creditors and subsequent purchasers no notice whatever of the property to be embraced. A very different rule obtains where future acquisitions are attempted to be mortgaged, from that which exists with reference to property then owned by the grantor. A man or a corporation may well mortgage "all of its property then owned," without further words of description, because the fact of present ownership serves as an indicator to point to and identify the property. But neither a man nor a corporation can, by general terms only, mortgage — so far as subsequent purchasers and creditors are concerned — everything that it may thereafter acquire, through all time; for this would be a mere pledge of its capacity of acquisition, and would afford no sort of indication of what was to pass under the instrument.

A deed of " all my estate " or " all my property " is good ( *Wilson* v. *Boyce*, 92 U. S. 320), but a deed of " all the estate that I may hereafter acquire " is a nullity; and while a court of equity might, perhaps, enforce a mortgage of such a character, as between the parties, after the acquisition of the property, it would be utterly void as to third persons.

A distinction is made by some of the authorities between

mortgages of future acquisitions executed by railroad companies and similar instruments made by natural persons. It is said that a mortgage of a railroad and its future property will carry all after-acquired property appurtenant to, and necessary for building and operating the road and carrying out the purposes for which it was created, while a similar instrument will be inoperative if executed by a private person. This is true if the mortgage executed by the private person is upon a specified piece of property, without reference to any accretions or additions to it, because there can be no accretions of property appurtenant to the person of the mortgageor; but it is untrue if the individual has mortgaged his business and the property then appurtenant to, or afterwards to grow out of, and to be added by accretion to the particular business that is pledged. Thus, a natural person, equally with a corporation, can execute a valid mortgage of a ship and the profits of its voyage, or of a factory and the machinery then in it and to be placed in it, or of a farm and the products to be produced upon it, or of a flock of sheep and its natural increase and future-grown wool; and so a railroad company can execute, in general terms, a valid mortgage of its road-bed and franchises, and all of its real and personal property then owned or thereafter acquired, *provided* the future acquisitions be such as belong naturally to the business of constructing and maintaining the road and performing its primary end as a common carrier of passengers and freights. The things which may be deemed essential or useful, and therefore appurtenant, to the great work of building and operating a railroad, will frequently be more extensive and varied in their character than those which can properly be regarded as accretions to the business of private persons; but the principle is the same, and, where the facts concur, the law must be the same as to both.

The mortgage in the present case would be clearly void as to the after-acquired property, for uncertainty of description, if it had been executed by a private person, without reference to some enterprise, undertaking, or venture as to which the

future property could be deemed an accretion.  It is equally so when executed by a railroad company, if the property to which it is sought to apply it was not appurtenant to the business of the company.  When property is to be deemed appurtenant to a railroad enterprise, is discussed in many cases, a few of which we cite : *Mosley* v. *Mississippi & Ohio R. Co.*, 52 Miss. 127 ;  12 Wis. 649 ;  25 Barb. 284 ;  47 Pa. St. 465 ;  24 Ohio St. 28 ;  22 N. Y. 494.

In *Pierce* v. *Emery*, 32 N. H. 484, it was held that after-acquired property, where appurtenant, would pass by a mortgage of a railroad and its business, although there was no provision as to future property.  This doctrine is denied, and we think properly, by the better considered cases.

The property involved here does not fall within any well-considered definition of the term " appurtenant," nor can it possibly be regarded as either necessary or legitimate to the business of a railroad corporation.  It consisted of a hotel, a brick storehouse, some vacant town-lots, and a farm of three hundred acres.  The hotel was not used as a railroad eating-house, there being no station-house or depot at the town, but seems to have been used as an ordinary hotel for the entertainment of guests.  The other property was rented out for the several purposes for which it was adapted.

It was used for these purposes by its former owners before its acquisition by the railroad company, and continued to be so used after that acquisition.  It was applied to no new use ; and except that, after its acquisition, the several tenants occupying it paid rents to the railroad company, it served no beneficial purpose whatever to the railroad.  Clearly, it was not appurtenant to it.  It is urged, however, that the company making the mortgage was authorized by its amended charter to acquire this property ; that this amended charter had been granted by the Legislature before the execution of the mortgage, and that, therefore, while the language used in reference to after-acquired property would be too vague if used by a private person, or a corporation ordinarily, it will be suffi-

cient when used by this corporation, and will cover all the property that it was by its charter authorized to hold. The amended charter was. enacted with reference to a proposed extension of the railroad from Canton to Aberdeen. For this purpose it vests the company with the right to acquire and hold, "at each termination of said railroad, and at any other place along the line of said railroad, or in the vicinity thereof, any quantity of land, not exceeding in any one place five hundred acres, to be used for all necessary purposes of said railroad, or to be disposed of at pleasure, for the purpose of constructing and maintaining said railroad."

We entertain serious doubts whether this act authorized the acquisition of real estate anywhere except "at the terminations" of the proposed extension, — to wit, at Canton and Aberdeen, — or along the line of the road to be built between those *terminations*. The land here involved lies more than a hundred miles below Canton, and along that portion of the road which had been completed years before the passage of this act. But conceding that the act authorized the purchase of land all along the line, both of the completed and of the uncompleted portion, from the Louisiana State line to the town of Aberdeen, then it is safe to say that it would justify the acquisition of a million acres of land.

For what purpose was this enormous amount of land to be obtained and used? Either "for all necessary purposes of said railroad," or "to be disposed of at pleasure, for the purpose of constructing and maintaining said railroad." If it was to be bought and used "for necessary purposes," then it was to become appurtenant to the road; but we have seen that the property here involved was not so bought or used, but, on the contrary, it was when bought, and it thereafter remained, dedicated to purposes utterly foreign to the business of a common carrier.

If, on the contrary, we are to understand that by the words "to be disposed of at pleasure, for the purpose of constructing and maintaining said railroad," the company was empowered

to buy this immense quantity of land, scattered along a line of three hundred miles, situated in many counties, and with no restrictions except that it should be in five-hundred-acre tracts and in the vicinity of the road, it follows that the company was vested with power to enter the market generally as a purchaser, holder, and speculator in real estate. It might become the owner of plantations and of factories, and of entire towns and villages, and buy and sell and lease lands applied to every use known among men ; nor would it be bound to dedicate them, after they were acquired, to any purpose whatever connected with its business as a common carrier. It would differ, therefore, as to such lands, in no respect from a private person, so far as its right, either of acquisition or of disposition, was concerned, and hence there must be applied to its conveyances the same rules of construction as if they were made by private owners. It follows that, as the mortgage of the after-acquired property would have been void as to third persons if made by a private person, it is equally so as to the lands here involved, though made by a railroad company.

The case of *Calhoun* v. *Paducah Railroad Company*, 9 Cent. L. J. (No. 4) 66, is quite in point, and the opinion of Hammond, J., of the United States District Court for the Western District of Tennessee, compensates by its learning and ability for any lack of authoritative character in the tribunal. Strikingly similar, also, is the case of *Morgan* v. *Donovan*, 58 Ala. 241.

There is no merit in the objection that, even though the mortgage was not operative on the land, plaintiff obtained no title to it under the sheriff's sale because, at the time it occurred, the property was in the hands of a receiver appointed by the Federal court in the proceedings for foreclosing the mortgage. The receiver was not ordered to take possession of this land specifically, but was only directed to take charge generally of the property embraced in the mortgage ; and nowhere in the proceedings was this land specifically alluded to until the filing of the receiver's inventory, more than a year after the sale by the sheriff under execution and the purchase of the property by the plaintiff.

The receiver never took visible possession of the property, except by receiving rents from the tenants previously in possession, nor was anything done to admonish the public that this property was claimed as being embraced in the mortgage. Under these circumstances, as the property was not embraced in the mortgage, the purchaser at the execution-sale got a good title.

Judgment reversed, and judgment here, on the agreed state of facts, for plaintiff.