### J. T. McCown v. D. Mayer.

CROP.    *Sale or mortgage of when unplanted.*

   The owner of land may (by the common law) mortgage or sell a crop to be afterwards planted thereon. *Everman* v. *Robb*, 52 Miss., 653, cited.

APPEAL from the Circuit Court of Warren County.

HON. RALPH NORTH, Judge.

J. S. Acuff being the owner of a certain tract of land, on the 24th of March, 1887, executed a deed of trust to J. T. McCown,

as trustee for the benefit of W. H. Andrews & Bro.'s, upon the cotton to be grown on that land during the year 1887. Acuff was then indebted to W. H. Andrews & Bro's, and wished to obtain from them money and supplies to be used in making a crop on the land referred to during the year 1887 ; and the deed of trust was given to secure the existing indebtedness, and to procure the advance of money and supplies desired. The deed of trust was recorded within a few days after the execution thereof.

The cotton which the deed of trust purported to convey " was not planted until about thirty days after the deed of trust was acknowledged and delivered."

At the time of the execution of the deed of trust, Acuff was indebted to D. Mayer upon a judgment before that time recovered by Mayer against him. And, in the latter part of the year 1887, Mayer obtained from Acuff two bales of cotton which it was the purpose of the deed of trust to convey to McCown, and applied the proceeds thereof to his judgment. The cotton having been converted, the trustee in the deed of trust brought this action to recover its value. The case having been submitted to the judge, upon an agreed statements of facts, a judgment was rendered in favor of the defendant ; and thereupon the plaintiff appealed.

*McCabe & Anderson*, for the appellant.

The simple and only question for consideration is whether a deed of trust given by the owner of land on a crop to be planted and grown on said land passes the legal title and can be enforced in a court of law ?

Our contention is that the affirmative of the proposition is true. Since the repeal of Chap. 51, Sec. 1359 of the Code, 1880, which leaves the common law to govern it in such cases, public opinion on this question has been at sea, and even the legal fraternity have indulged in much speculation as to how our Court, when called upon, would settle it. It is a question of more practical importance universally than any, perhaps, that has arisen before this Court for a number of years, and we ask a full, thorough and complete settlement of it.

There are three different rules adopted by the Supreme Courts of the different States on this subject.

(1.) Some of them hold that such a deed of trust or mortgage is void and conveys neither a legal or equitable title to the crops. *Hutchinson* v. *Ford* (Ky.), 9 Bush., 318; 15 Am. Rep., 711; *Comstock* v. *Scales*, 7 Wis., 159.

(2.) Some hold that they are valid only in equity—that they convey only an equitable interest or title. *Apperson* v. *Moore*, 30 Ark., 56; 21 Am. Rep., 170; *Mayer* v. *Taylor*, 69 Ala., 403; 44 Am. Rep., 522, etc.

(3.) While others hold that they are valid at law and good to convey a legal title. *Arques* v. *Wasson*, 51 Cal., 620; 21 Am. Rep., 718; *Van Hoozer* v. *Cory*, 34 Barb., 12; *Conderman* v. *Smith*, 41 Barb., 404; *Wyatt* v. *Watkins* (Tenn.), 30 Am. Rep., 63, note; 32 N. Y., 412, and a number of others.

While our Court has not, as yet, been called upon to decide the precise question here presented, it has held that a deed of trust of this kind is enforceable in equity; and we submit that it holds inferentially that it can be enforced also in law. *Sillers* v. *Lester*, 48 Miss., 513; *White* v. *Thomas*, 52 Miss., 49; *Everman* v. *Robb*, 52 Miss., 653.

It will also be observed that in these cases the Court comes step by step in our direction and needs to take only one more step to adopt our position outright. Will it not take it in this case?

*Booth & Blackwell*, for the appellee.

This record presents the very interesting question whether the *legal title* can be conveyed to a crop of cotton not yet planted, so as to authorize the mortgagee or trustee to maintain an action at law to recover its value in the hands of a third party. The matter involved is an important one to our commercial community at large, and we think the reason of the thing, as well as the decided weight of authority, is in favor of the negative of the proposition.

That such a contract will clothe the mortgagee or trustee with an *equitable* claim on the crop when it *comes into being*, which will be enforceable in a court of chancery, will be considered as well settled; but it is believed no common law action can be maintained, for want of the *legal* title to sustain it. The courts of the country are in conflict on this question, and those

courts which have held that an *unplanted* crop can be made the subject of sale or grant have proceeded on the idea that the crops have a *potential existence.* What is meant by the term *potential existence?*

As we understand the term, things have a *potential existence* which are, first, the *natural* product of something then owned by the vendor, and which *naturally* grows from and springs out of it; or, in other words, those things which have the power, so to speak, of reproducing themselves, or are of perennial growth in character; such, for instance, as the wool of sheep then owned by the vendor, the natural fruits of the earth and the grasses of the field. These things have a potential existence, because the embryon is always there, and grows and reproduces itself by virtue of the eternal laws of nature.

Secondly, those things have a potential existance which are initiated not by virtue of any inherent power within themselves, but which require the aid of some *external* agency to bring them into being, as, for instance, the young of animals.

But to affirm that an *unplanted* crop of corn and cotton, which lives only in the imagination of the hopeful farmer, has a *potential existence,* seems to us to contravene good common sense.

This case we submit falls within the class of *executory contracts* which belong to the domain of equity jurisprudence, but which courts of law, under our system, are powerless to effectuate. In support of the views herein presented, we beg leave to refer the court to the following cases directly in point: *Hutchinson* v. *Ford,* 9 Bush, Ky., 318 ; *Milliman* v. *Neher,* 20 Barber, 38 ; *Bank of Lansingburg* v. *Crary,* 1 Barber, 542 ; *Otis* v. *Sill,* 8 Barber, 102 ; *Comstock* v. *Scales,* 7 Wis., 159 ; *Apperson* v. *Moore,* 30 Ark., 56 ; *McCaffrey* v. *Wooten,* 65 N. Y., 459 ; *Mayer* v. *Taylor,* 69 Ala., 403.

Cooper, J., delivered the opinion of the Court.

The single question presented by this appeal is whether the owner of the soil may make a sale valid and enforceable at law of a crop to be thereafter planted on his land.

We consider the point as settled in the affirmative by the case of *Everman* v. *Robb,* 52 Miss., 653.

In that case the action was begun by an attachment for rent sued out by the landlord under which certain cotton in the possession of Everman & Co. was seized. The landlord claimed a prior right to the cotton by reason of a reservation in the lease and a grant by the tenant; the lease having been executed and acknowledged both by the landlord and tenant. Subsequent to the lease, the tenants gave an " agricultural lien " for supplies to Everman & Co., and delivered the cotton to them in payment of the debt secured thereby.

Everman & Co. interposed a claimant's issue instead of bringing the statutory action of replevin, but the cause was tried without objection having been made on account of the irregularity. The court, while criticising the form of procedure, dealt with the case as an action of replevin, and declared what were the legal rights of the parties.

The judge by whom the opinion was written broadened the field of discussion, and entered somewhat into the history of equitable liens which courts of law could not enforce. But the point for decision was whether an unplanted crop had a " potential existence," making it the subject of a valid sale by the owner of the soil, and the court on this point said: " These tenants were purchasers of the land for the term of five years, to be used for agricultural purposes; as security for the price to be paid they pledged the crop. The thing hypothecated was to spring out of the soil; it was directly connected with the land which the tenants owned for the term; the crops were contingencies depending on present existing property or interest in the lessees, and therefore the subject of sale or assignment. Story on Sales, Sec. 186." " Whilst a person cannot make a present sale of all the wool that may be grown on sheep which he may thereafter buy, nor of any other thing in which his interest is wholly prospective and doubtful, there may be a valid sale of the wine a vineyard is expected to produce, or the grain a field is expected to grow, the milk of a cow for the next year, or the future young of animals. Story on Sales, Sec. 185."

It is therefore settled by that case: 1. That one may make a present sale or mortgage of things having a " potential existence," as the books designate it, and 2. That an unplanted crop

has such "potential existence" as to the owner or lessee of the soil.

*The judgment is reversed and judgment here on the agreed facts for the appellant.*