FIDELITY AND DEPOSIT COMPANY OF MARYLAND *v.*
B. F. STURTEVANT COMPANY.

86    509
e91    841

1. CHATTEL MORTGAGES.    *After-acquired property.    Description.*

A mortgage of personal property used in a business may cover
future acquisitions of property used in and about the business,
or the natural products arising from the operation of the busi-
ness, but to accomplish that end such mortgage must specifically
describe the property either as property which will be acquired
in and belong naturally to the business or as property which
will be put in a certain building, place, or locality.

2. SAME.    *When not valid as to third persons.*

A deed of trust covering all the mortgagor's property and fran-
chises of every nature and description, whether now owned or
"hereafter to be acquired," including its equipments, personalty,
lands, machinery, and real estate in a certain town and else-
where, together with the factories, tenements, and appurte-
nances belonging to the property, and the reversion, remainder,
tolls, rents, issues, and profits thereof, and also all the estate,
title, and interest in law or in equity which the mortgagor
"now owns or may hereafter acquire," is not sufficiently definite
in its description to convey, as against third persons, the after-
acquired property of the mortgagor.

3. SAME.    *Code* 1892, § § 2719, 2720.    *Writ of seizure.    Forthcoming bond.*

Where property has been taken under a writ of seizure levied
pursuant to Code 1892, § § 2719, 2720, a voluntary surrender of
such property by defendant to a third person, having no valid
prior right thereto, subsequent to the levy of the writ and to
the execution of a forthcoming bond, cannot defeat the lien
of plaintiff in the writ, nor release the surety from its obliga-
tion for the forthcoming of the property.

FROM the circuit court of Sunflower county.

HON. A. McC. KIMBROUGH, Judge.

The B. F. Sturtevant Company, the appellee, a corporation,
was plaintiff in the court below, and the Moorhead Cotton
Mills, also a corporation, was defendant there.    Some personal

property was seized at the beginning of the suit, under Code 1892, §§ 2719, 2720, and defendant gave bond, with appellant as its surety, for the forthcoming of the same. The appellant, the surety, made defense to the suit, and, failing therein, it prosecuted an appeal to the supreme court. The facts are fully stated in the opinion of the court.

*Johnson & Neill,* for appellant.

The question involved in this case requires a construction of Code 1892, ch. 79. At common law there was no lien for purchase money on personal property which had actually been delivered to the purchaser. By the delivery the purchaser obtained an unincumbered title, unless there was a special contract to the contrary. An examination of ch. 79 discloses that no new lien is given therein. It provides a method by which a lien may be fixed upon the property sold for the purchase money, while the property is in the hands of the first purchaser. Statutes in derogation of the common law are strictly construed, and an enactment which would bring about such a radical change as giving a vendor's lien upon personal property would have to be plainly expressed. Chapter 79 nowhere enacts a lien upon personal property which has been sold and delivered. It merely provides for the fixing of a lien upon the property for the purchase money by a proceeding in court, while the property is in the hands of the first purchaser. Under this statute the lien does not attach until there has been a writ issued and the property seized. The lien that is provided by this judicial proceeding is not a first lien. It takes its place according to the date at which the property is seized. This lien is subject to such other liens as may, before the date of seizure, have been fixed upon the property. It will be noticed that the plaintiff brought his suit in the circuit court, and the writ was issued on the 31st day of January, in the year 1903. We submit that the levy of this writ was the first

time that there was a lien fixed upon the property for the purchase money. The trust deed was a sale *sub modo,* and, by the terms of the statute, is superior to the lien fixed by the writ for the purchase money.

We next inquire as to whether the mortgage or trust deed under which the property was sold was a superior lien to that acquired by the plaintiff on January 31, 1903. In July, 1901, the Moorhead Cotton Mills excuted a trust deed to secure a certain indebtedness to the International Trust Company of Maryland. This deed was filed for record in September following. In August, after the execution of the trust deed in July, the plaintiff sold and delivered to the Moorhead Cotton Mills, on credit, the property now in controversy. By the sale and delivery of this property the title passed to the Moorhead Cotton Mills, and this independently of the question as to whether they had paid the purchase money or not. The title having passed to the Moorhead Cotton Mills in August to determine the priority of the trust deed taken in July, two questions are to be solved:

First—Is this trust deed upon the equipments of the mill to be afterwards acquired, a valid lien?

Second—As to whether a lien upon property not in possession can be acquired which is better than liens taken or acquired after the property has come into possession. This is a much-mooted question. But the authorities in this state and elsewhere, we think, decide it in the affirmative.

As the property was not in possession at the time of the taking of the lien, of course the legal title did not pass; but the mortgagee obtained an equity, and as soon as the property came into possession of the mortgagor, a lien was fastened upon it. There are certain restrictions thrown around this doctrine. One cannot mortgage generally all property to be acquired within a given time, after the date of the execution of the

instrument.    In a note in "Book 18, Lawyers' Reports Annotated, p. 299," we find his statement of the doctrine:

"(A) The contract must relate to some particular property described therein, which, though not in existence, must be reasonably certain to come into existence, so that the minds of the parties may be in agreement as to what is to be.

"(B) The vendor, or mortgagor, must have a present, actual interest in it or concerning it.    There must be something in present of which the thing in future is to be the product, or with which it is to be connected, and necessary for its use, or as incident to it, constituting a tangible existing basis for the contract."

In the case of *Sillers* v. *Lester,* 48 Miss., 513, a mortgage upon mules that were to be afterwards bought and brought upon the plantation to be used in making a crop was held to be a superior lien to a trust deed upon the same property taken after it came into possession.

The property mortgaged in this case and in controversy here is a part of the machinery that was to be placed in the cotton mills, the mills at the time being already in existence.    We think that the right to mortgage this after-acquired equipment of the mills is fully sustained by the authorities.

We respectfully submit that the Moorhead Cotton Mills had a right to give a lien upon its machinery, afterwards to be acquired, for the security of its indebtedness, and we further submit that the instrument which has been set out in the pleadings properly describes this after-acquired machinery, and that the ruling of the circuit court upon this point is error; and we, therefore, ask that the case be reversed and remanded.

*Chapman & Quin,* for appellee.

Giving the fullest amplitude in construction of the instrument warranted in the future acquisition of property, it fails to reach the point of sufficient certainty, as pointed out by the

decisions quoted by counsel for appellant, to take it out of the rule established and maintained, of being too general to pass the title of the after-acquired property to the mortgagee.

Summarized, the situation is as follows: The Moorhead Cotton Mills sells to the International Trust Company of Maryland all of its property and franchises of every nature and description whatever, whether now owned or hereafter to be acquired. There is no limitation here as to the amount or character of the property or the time in which it is to be acquired; no locality is mentioned; but it is a conveyance of all of its property, wherever then owned, and all of its property, wherever hereafter to be acquired. This description is general. In this general description it includes other property—to wit, all its equipments and personalty, and all its lands, buildings, machinery, and real estate in the village of Moorhead, county of Sunflower, state of Mississippi, and elsewhere. This part of the clause does not limit the property above enumerated to the village of Moorhead, but it expressly states that all the personalty and lands and buildings and machinery and real estate in the village of Moorhead, and elsewhere, that are in any other places or locations, are included in this part of the paragraph, showing conclusively that that part of the clause last mentioned is also general. There is also another part of this clause that conveys all of the Moorhead Cotton Mills' franchises, rights, and privileges, and all of the lots or parcels of land, with buildings and improvements thereon, situate, lying, and being in the village of Moorhead, which are described by numbers. Then there is an additional part of the above clause, which is as follows: "Together with all and singular the factories, tenements, hereditaments, and appurtenances belonging to the property hereby conveyed or in any wise thereto appertaining; and the reversions, remainders, tolls, incomes, rents, issues, and profits thereof; and also all the estate, right, title, and interest, property, possession,

claim and demand whatever, as well in law as in equity, of the party of the first part of, in, and to the same, and any and every part thereof, and appurtenances; and also all and every other estate, right, title and interest, property and appurtenances which the said party of the part now owns, or may hereafter acquire." Analyzing this last-mentioned part of the clause, it conveys the factories, tenements, hereditaments, and appurtenances belonging to the property hereby conveyed, which property includes all of its lands, buildings, machinery, real estate in the village of Moorhead, county of Sunflower, state of Mississippi, and elsewhere; and this part of the clause is just as objectionable on account of its being general as the other parts of the clause referred to. The after-acquired property in all parts of this clause is not limited anywhere to any building or any factory in the village of Moorhead, but takes in property wherever owned, or wherever hereafter to be acquired, by the party of the first part. There is no limit to locality, time, or any other elements that would give certainty to its grant.

Tested by the authorities mentioned in appellant's brief, it is not sufficient to convey after-acquired property.

*Mayes & Longstreet,* on the same side.

The question as to how far rights and liens may be given to mortgagees on, in, and to property to be acquired by the mortgagor after the date of the execution and delivery of the instrument is not a new question in Mississippi. There has been much complexity of learning on the subject in many of the courts of the United States, but it has been a matter of gratification to the writer to observe, during the close examination of the question here presented, that the supreme court of Mississippi has, in each instance, adopted the safe, wise, and moderate middle course with respect to the three classes, or divisions, of cases where rights and liens on property acquired after the execution of the instrument have been granted.

These divisions may be said to be three in number:

1. There are cases declaring the principle asserted and recognized by all the courts, that a mortgagor may create a valid lien on things which have a potential existence in property already owned by the mortgagor. Thus a plantation owner may mortgage the crops to be produced on his lands; the present owner of a flock of sheep may mortgage the crop of wool to be shorn from them; the owner of an orchard of fruit trees may mortgage the fruit to be produced from the orchard. All these cases find illustration and assertion in this state in such cases as *Everman* v. *Robb,* 52 Miss., 653; *McCown* v. *Mayer,* 65 Miss., 537; *Russell* v. *Stevens,* 70 Miss., 685.

These principles are familiar and conceded, and the case at bar does not in any wise come under this division.

2. There is another class of cases in which the lien on "after-acquired" property is sustained—when the facts of the particular case show one proper for equitable relief. These cases are those where the property mortgaged, or on which a lien is acquired under an "after-acquired" clause, is exchanged and traded for other property by the mortgagor, and the right of the mortgagor to subject the substituted property has been declared in proper cases to be effectual in the equity court.

But we submit that even this second division does not sustain the contention often made that the mortgagee can always subject the substituted property, and the only difference is that in such cases he must use the chancery court as the forum in which to obtain relief. The reason he is sent to the equity court lies deeper than a mere matter of procedure. He must show a case proper for equitable relief; if the mortgagor has been guilty of laches, or if there is any kind of estoppel on him, or any reason of any kind which would operate to deny the ordinary complainant in equity relief, a mortgage creditor claiming a lien on "after-acquired" and substituted property would also be denied relief, if the reasons existed against him.

This division of cases may be illustrated by allusions to the case of *Davis* v. *Marks,* 55 Miss., 376.

But we desire here to call the attention of the court to the fact that, in the opinion in that case, the fact that the holder of the property "had personal knowledge" of the existence of the original lien on the property and of the existence of the deed of trust was emphasized as the reason why the lien was enforced against it. It may be asserted, we think, safely, that in this division of cases a lien would be denied where the property had gone into the hands of an innocent purchaser for value, without any notice at all. The very foundation on which the supposed liability of the after-acquired property in the hands of a third person is put will appear, by close analysis of all the cases of this kind, to be the assertion somewhere in the record that the holder of the property knew, or ought to have known, of the existence of the lien. The case at bar, however, does not come within this division of cases.

3. There is another division, in which it is alleged that corporations, like a great railroad corporation or large manufacturing corporation, may mortgage not only the property in possession of and owned by them, but also such other property as such corporations might from time to time acquire, and which was to be used in and about the business of such corporations and which was appurtenant to it.

A good many courts have held this principle could be upheld only in favor of railroad corporations and others, because of the multitude of articles of ownership used and acquired by them, but in the case of *Mississippi Valley Co.* v. *R. R. Co.,* 58 Miss., 896 to 908, inclusive, Chief Justice Chalmers declares that the principle is as applicable to private corporations and to individuals as to railroad corporations and *quasi* public corporations.

In this case, while the principle is upheld, Judge Chalmers construed the provisions of a mortgage almost identical with

those used here, and he expressly and positively condemns them as too general. He asserts that in the third class of cases, if a lien on after-acquired property is asserted, the mortgagor must show that the description was specific and definite; that it must describe the property either as property necessary to the original business and acquired in it, or that it should be specifically described as property which would be put in a certain situation, building, or locality.

We desire, respectfully, to call the attention of the court to the close similarity of the provisions condemned in this case and the one inserted in the mortgage of the Moorhead Cotton Mills to the International Trust Company.

There is no allusion in the mortgage here to the fact that this "after-acquired" property to be acquired by the Moorhead Cotton Mills should be property which should be used in and about the manufacturing business of the company. There is no statement that it is to be property appurtenant to such business, nor any descriptive terms referring to it as property thereafter to be acquired and put in its mills. There is absolutely no limitation as to the character of the property and uses and purposes of its acquisition or designation or locality.

Argued orally by *Eugene Johnson,* for appellant, and by *James C. Longstreet,* for appellee.

HOUSTON, J., delivered the opinion of the court.

The appellee sold and delivered to the Moorhead Cotton Mills, a corporation of Moorhead, Sunflower county, Mississippi, certain machinery on credit, without express reservation of title. After the purchaser had failed to pay for same at the time stipulated, appellee instituted, on January 30, 1903, suit and proceedings in the circuit court against it, under Code 1892, ch. 79, the appellee (plaintiff below) making the requisite affidavit under said statute. The sheriff duly executed

the writ of seizure and took said machinery into his possession on January 31, 1903, but released and restored same to said cotton mills on February 2, 1903, upon their executing proper forthcoming bond, with the appellant as surety. When said court convened, the defendant made no defense whatever to the suit, and did not appear; but appellant, as said surety, on April 20, 1903, filed a special plea, setting up that on July 1, 1901, the Moorhead Cotton Mills executed (without stating to whom) its certain deed of trust covering all of this property; that on the first Monday of February, 1903, default having been made in the payment of the debt thereby secured, all of the property of said Moorhead Cotton Mills, including this machinery, was sold and delivered to third parties (without stating to whom); and that it is not now in the control of said cotton mills or this surety, and is not subject to any judgment in favor of plaintiff. To this plaintiff filed a replication, alleging that said deed of trust (which is made an exhibit to the replication) was executed on July 1, 1901, but not filed for record until September 14, 1901; that this machinery was sold and delivered to said cotton mills on August 29, 1901, and that the purchase money due therefor remains unpaid, and is the demand here sued on, and that said property was levied on and seized under the writ of seizure herein, while it was still in the hands, possession, and control of said cotton mills; that said deed of trust was not a paramount or prior lien to the purchase-money lien of plaintiff on said property, which had been seized under the writ in this suit; that said deed of trust was utterly void as to "after-acquired" property, because of insufficiency and too great generality of description; that, after its filing and delivery, the mortgagee therein parted with no new consideration to defendant cotton mills; that the alleged foreclosure was merely *in pais;* and that said cotton mills voluntarily and wrongfully surrendered possession of said property on which plaintiff had a paramount

lien, and for the forthcoming of which said cotton mills and said appellant as surety had executed their bond in this proceeding, which was then still pending undetermined.    To this replication the appellant, as such surety, interposed a demurrer, which, being overruled, and the cotton mills and said surety declining to plead further or make further defense, judgment final was entered against them, from which the said surety alone appeals, the principal not joining therein.

The deed of trust under which it is claimed the *cestui que* trust acquired a lien on this machinery was .executed by the said cotton mills to the International Trust Company to secure 100 bonds of $1,000 each, aggregating $100,000, dated July 1, 1901, and payable twenty years from date.    The description . of the property therein is as follows: "All and singular its [the Moorhead Cotton Mills'] property and franchises of every nature and description whatever, whether now owned or hereafter to be acquired, including all its equipments and personalty, and all its lands, buildings, machinery, and real estate in the village of Moorhead, county of Sunflower, state of Mississippi, and elsewhere, and all its franchises, rights, and privileges, and all and singular the lots, pieces or parcels of land, with all and singular the buildings and improvements thereon, situated, lying, and being in the village of Moorhead, county of Sunflower, state of Mississippi, bounded and described as follows [here follows a particular description of the lots and parcels of land situated in the village of Moorhead], together with all and singular the factories, tenements, hereditaments, and appurtenances belonging to the property hereby conveyed, or in any wise thereto appertaining; and the reversion, remainder, tolls, incomes, rents, issues, and profits thereof; and also all the estate, right, title, and interest, property, possession, claim, and demand, whatsoever, as well in law as in equity, of the party of the first part of, in, and to the same, and any and every part thereof; and also all and every other estate,

right, title, and interest, property, and appurtenances which the sad party of the first part now owns or may hereafter acquire." Now, at the time this deed of trust was executed (July 1, 1901) the grantor did not own or have in its possession this machinery, which was not sold to it until after August, 1901; so that, of course, no lien or right of any kind was given on it to the International Trust Co. under the provision as to the property "now owned" by the grantor; and if the deed of trust gave any lien on or right to said machinery, it must exist under that provision of the deed of trust as to "after-acquired property." But when the appellee sold and delivered this machinery to the Moorhead Cotton Mills it had (so far as appears from this replication or record) no actual notice of any such deed of trust, nor did it have constructive notice of that deed of trust, because it was not filed for record until September 14, 1901. The replication also alleges—and, of course, the demurrer admits—that after its filing and delivery the mortgagee parted with no new consideration to said cotton mills, and before any foreclosure or sale under said deed of trust, and while the property was still in the hands, possession, and control of said cotton mills, the first vendee, that appellee, the seller, had exercised his right given him by the statute, and acquired his purchase-money lien by the levy of the writ of seizure on the property, and said cotton mills, with this appellant as surety, had executed a forthcoming bond for it. While, of course, it is settled law in this state that a party can, under proper restrictions and limitations, give a deed of trust on property to be thereafter acquired by him, still this court said in *Cayce, Trustee,* v. *Stovall,* 50 Miss., 400, cited by counsel for appellant: "We do not wish to be understood as having committed ourselves to the broad doctrine that a mortgage of chattels thereafter to be acquired is unlimited, and in all circumstances to be sustained." And in *Everman* v. *Robb,* 52 Miss., 660 (24 Am. St. Rep., 682), after reviewing the cases announcing the doc-

trine of equitable liens on things not *in esse* at the date of the contract, the court says: "A careful study of the cases will disclose: (1) That in each instance the contract had reference to some particular designated property which may, in the ordinary course of things, and with reasonable certainty, come into existence. (2) The assignor or mortgagor must, at the date of the contract, have an actual interest in or concerning the subject. There must be an interest *in praesenti,* of which the future acquisition is the product, or in such wise incident to or connected with it, constituting a tangible and substantial predicate of a contract." Learned counsel for appellant expressly recognize this as a correct statement of the law, and, after saying that there are certain restrictions thrown around the doctrine that a party can give a valid mortgage on after-acquired property, and that he cannot mortgage generally all of his property to be acquired within a given time after the date of the instrument, they give excerpts from *Deeley* v. *Dwight,* 18 L. R. A., 299, note, where almost the exact language is used as that above quoted from 52 Miss., 660 (24 Am. St. Rep., 682). Certainly the instant case does not fall within that class where, at the date of the contract, the mortgagor, having an actual interest *in praesenti* in the subject of which the future acquisition was the product, may give a valid lien on the products of said property already owned by him, because such products, though not *in esse,* have a potential existence. There the thing hypothecated springs out of, or is the product of, the property, which, at the date of the deed of trust, is owned, or leased, or in possession of the grantor by consent of the owner. For instance, as shown by the court in *McCown* v. *Mayer,* 65 Miss., 541 (5 South. Rep., 98), there may be a valid sale or mortgage of the wine the owner's vineyard is expected to produce, or of the crops produced on the land, the milk of the owner's cows for the next year, or the future young of animals, or the wool that may be

grown on sheep which are then owned by the grantor, but not on sheep which he might thereafter acquire. And even in such cases the mortgagor must have at the time an actual interest in or concerning the property, of which the future acquisition is the product, and that property must be definitely described or designated. Under this head, or subdivision, fall the following cases, among others: *McCown* v. *Mayer, supra; Everman* v. *Robb, supra; Russell* v. *Stevens,* 70 Miss., 685 (12 South. Rep., 830). Of course, the Moorhead Cotton Mills, at the date of this deed of trust, were neither the actual owners nor were they the potential owners of this machinery; and, of course, it was not the product of property then owned by said mills. As well said by counsel for appellee, "machinery cannot grow machinery" like sheep grow wool or lands produce crops. It is evident, therefore, that this deed of trust and this case do not fall under this division.

There is, in this state, another well-recognized class of cases where after-acquired property may be mortgaged under well-defined limitations and restrictions. A mortgagor who has an actual interest *in praesenti* in certain property may mortgage not only that property, but also such other property as the mortgagor may thereafter acquire, provided always said future acquisitions are to be used in and about the business, or are attached or appurtenant to and necessary for said business, or are the natural products arising from the operation of said business, constituting a tangible, substantial, and existing predicate for the contract. And even then this doctrine is subject to the limitation that it must be shown that the description of the property is definite, and the instrument itself must specifically describe it, either as property which is acquired in and belongs naturally, if not necessarily, to the original business, or as property which would be put in a certain building, place, or locality. This doctrine, with its limitations and restrictions, has been so fully and lucidly expressed and enunci-

ated by Justice Chalmers in the case of *Miss. Valley Co.* v. *Chicago, etc., R. R. Co.,* 58 Miss., 896 (38 Am. St. Rep., 348), as to render it unnecessary to do more than refer to that case, and to say it has been twice approvingly cited—in the cases of *Williams* v. *Crook,* 63 Miss., 9, and *Packwood* v. *Atkinson,* 79 Miss., 646–651 (31 South. Rep., 337). In the first two cases just mentioned, descriptions in deeds of trust not as vague, indefinite, or general as the one in the instant deed of trust are positively pronounced and specifically condemned as too general and insufficient to operate to convey or give a lien on the property, and those deeds of trust were held utterly void as to third persons.

Without going into a detailed analysis of the description in this deed of trust under discussion, which we deem unnecessary, it must be apparent, upon a careful reading of same, that it cannot be held to meet the requirements of the law in regard to "after-acquired property." It will be noted that this deed of trust fails to show that the property thereafter to be acquired by said mortgagor should be used in and about the cotton mills or manufacturing business of the corporation, or should be the natural product arising from the operation of same, or that it should be attached or appurtenant to, or necessary for, said business; and neither the replication nor the record anywhere shows that, as a matter of fact, this machinery in controversy was ever used in or about said cotton mill business, or that it was ever attached or appurtenant to the cotton mill machinery, or was necessary for the operation of said business; in fact, it was seized and sold, so far as this record discloses, as separate, distinct, and independent pieces of machinery. Again, this deed of trust contains no restriction whatever as to the amount or character of the after-acquired property which it is to cover, or as to the uses and purposes for which, or as to the time within which, it should be acquired, or as to the locality where it was to be placed. It fails to give any of the

essentials or any fact which might render the description sufficiently definite to insure identification or to aid in distinguishing the property from all other property of the same kind. The debt secured by this deed of trust was not due for twenty years and was not barred for twenty-six years, and it might be renewed and run longer; and yet it attempts to cover all property of every kind and character, no matter for what purposes it is to be acquired or used, or whenever acquired, or wherever situated, whether in the state of Mississippi or elsewhere, and wherever it might be placed after it was acquired. The description of the mortgage in the case of *Sillers et ux.* v. *Lester et al.,* 48 Miss., 513, cited by counsel for appellant, expressly and specifically limited the locality where the after-acquired property was to be placed to the Asia plantation, and the time within which the property was to be acquired to the year 1870. This mortgage, in our opinion, being null and void in respect to after-acquired property, as to third persons, of course the sale of this machinery thereunder was void. Besides, it was made subsequent to the acquisition by the appellee of his purchase-money lien by the levy of the writ of seizure, under Code 1892, ch. 79, while said property was, as alleged in the replication, in the hands, possession, and control of the first vendee. *Frank* v. *Robinson,* 65 Miss., 171 (3 South. Rep., 253).

Nor is appellant's case aided by the Moorhead Cotton Mills having surrendered possession of this machinery, on which appellee had previously acquired said lien. The replication alleges that this possession was surrendered voluntarily and wrongfully, and it was done subsequent to the levy of the writ of seizure and to the execution by said cotton mills and this very appellant of a forthcoming bond for this property. At the very time of this voluntary surrender of the machinery it was *in custodia legis.* No legal proceedings were had in the premises to get lawful possession of it; and certainly its vol-

untary surrender by the mortgagor to a mortgagee who had no valid lien, or to any third person, could not defeat the rights of the prior valid lien of appellee, nor release this appellant surety from the obligation of its valid bond for the forthcoming of said property.

We think the demurrer to the replication was rightfully overruled.

*Affirmed.*